**F I L E D**
CLERK, U.S. DISTRICT COURT

10/7/2025

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ RYO _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2025 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | 2:25-CR-434(B)-JLS |
| Plaintiff, | S E C O N D S U P E R S E D I N G I N D I C T M E N T |
| v. | |
| ARA ARTUNI,<br>  aka "Ara Harutyunyan,"<br>  aka "Aro,"<br>  aka "Araboyi,"<br>  aka "Arabo,"<br>  aka "Santos,"<br>  aka "Edmond,"<br>ALEX AGOPIAN,<br>  aka "Alik,"<br>DAVIT HAZRYAN,<br>  aka "Davo,"<br>  aka "Dav,"<br>  aka "D,"<br>VAHAGN STEPANYAN,<br>  aka "V,"<br>  aka "Vee,"<br>  aka "Vova Titov,"<br>  aka "Juha Alver,"<br>  aka "Vahan Stephanian,"<br>  aka "Aso Balvanov,"<br>ARVIN ALBERT KAZARYAN,<br>  aka "Artur,"<br>  aka "Art,"<br>AREG BEZIK,<br>  aka "Elvis Narek,"<br>  fka "Narek Bezikian,"<br>MANUK MANUKYAN,<br>  aka "Briedis Malone,"<br>LEVON ARAKELYAN, | [18 U.S.C. § 1962(d): Racketeer Influenced and Corrupt Organizations Conspiracy; 18 U.S.C. §§ 1959(a)(3), (a)(5): Violent Crimes in Aid of Racketeering Activity; 18 U.S.C. § 1958(a): Use of Interstate Commerce Facilities in the Commission of Murder-for-Hire; 18 U.S.C. § 1349: Conspiracy to Commit Wire Fraud and Bank Fraud; 18 U.S.C. § 371: Conspiracy; 18 U.S.C. § 922(g)(1), (g)(5)(A): Prohibited Person in Possession of Firearms and Ammunition; 18 U.S.C. § 922(o)(1): Possession of Machineguns; 18 U.S.C. § 924(c)(1)(A)(i), (iii), (j)(1): Possess, Use, Carry, and Discharge of Firearms in Furtherance of, and During and in Relation to, Crimes of Violence and Resulting in Death; 26 U.S.C. § 5861(d): Possession of Unregistered Firearms; 26 U.S.C. § 5861(i): Possession of Firearms Not Identified by a Serial Number; 18 U.S.C. § 1546(a): Fraud and Misuse of |

CHRISTIAN SEDANO,
  aka "Bugsee,"
CARLOS ARMANDO OCHOA GRIMALDI,
  aka "Carlos Ochoa,"
  aka "Spanky,"
CHRISTOPHER AYALA,
  aka "Hits,"
EDIR DE LA CRUZ,
  aka "Temper,"
JOSE DE JESUS GONZALEZ, JR.
  aka "Listo,"
MARIA DE JESUS MARES,
  aka "Maria de Jesus Marez,"
  aka "Mari,"
  aka "Mary Oceans,"
ANNA VALERII GHAZARYAN,
  aka "Anna Ghazaryan," and
EDMON GAMAZYAN,

        Defendants.

Visas, Permits, and Other Documents; 8 U.S.C. § 1325(c): Marriage Fraud; 18 U.S.C. § 1963, 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. §§ 982(a)(2), (a)(6)(A) 28 U.S.C. § 2461(c), 18 U.S.C. § 924(d), 26 U.S.C. § 5872: Criminal Forfeiture]

The Grand Jury charges:

At times relevant to this Second Superseding Indictment:

## COUNT ONE

[18 U.S.C. § 1962(d)]

[DEFENDANTS ARTUNI, AGOPIAN, HAZRYAN, STEPANYAN, KAZARYAN, BEZIK, MANUKYAN, SEDANO, GRIMALDI, AYALA, DE LA CRUZ, GONZALEZ, MARES, GHAZARYAN, AND GAMAZYAN]

A.    INTRODUCTORY ALLEGATIONS

    1.    Armenian Organized Crime in Los Angeles County

    1.    Armenian Organized Crime, also referred to as the Armenian Mafia, originated in the former Union of Soviet Socialist Republics (the "USSR") and following the Cold War, existed under the control of the Russian Mafia (Russian: русская мафия, Romanized: *Russkaya Mafiya*), also known as ("aka") *Bratva* (Russian: Братва, English: brotherhood or band of brothers).

    2.    Armenian Organized Crime comprised senior leaders, members, and associates who resided in modern-day Russia and Armenia, as well

as other countries, including France, Spain, Iran, and the United States.  In the United States, most Armenian Organized Crime leaders, members, and associates resided in Los Angeles County, which contained one of the largest Armenian populations outside of Russia and Armenia.

3.    Armenian Organized Crime followed a "flat" or "flattened" organizational structure, in contrast to its traditional, strict, linear one where each member carried a specific title or rank and there was a clear, designated chain of command.  In Los Angeles County, this organizational restructuring led to the creation of decentralized, hybrid crime crews that included Armenian Organized Crime members as well as non-member and/or non-Armenian criminals.

4.    When residing outside of the former USSR and its surrounding territories, Armenian Organized Crime groups camouflaged themselves amongst expatriate and immigrant Armenian communities and used these communities as bases to establish Armenian criminal organizations internationally.  A hallmark of Armenian Organized Crime was the strategic use of violence to send a message, increase an individual's position within the Armenian criminal community, and/or leverage a business interest.  To avoid law enforcement detection, Armenian Organized Crime often assigned and tendered payment for the commission of acts of violence to non-Armenian criminal associates, such as members of *Sureño* (English: Southsider) street gangs, that is, Hispanic street gangs based in Southern California.

5.    Power and leadership in Armenian Organized Crime was based, among other things, on a combination of respect, seniority, that is, physical age, authority within the Russian Mafia, and relatedly,

authority and influence within the Armenian criminal community. Traditionally, Armenian Organized Crime members and associates reported to a specific, high-level male crime boss who was born either in Armenia or a country that was formerly part of the USSR. In Armenian Organized Crime, this crime boss was known as a "*orenk'ov gogh*" (Armenian: օրենքով գող, English: "thief in law") or "*gogh*" for short.  Colloquially, *goghs* were also referred to as "*kerop*" (or "*qerop*"), which is Armenian slang for both "made man" and "wise guy." A *gogh* could not be crowned, that is, named or appointed, without the blessing and/or approval of the Russian Mafia.

6.    Under each *gogh*, there were multiple elders who each controlled their own organized crime group.  The elders were the direct connection to the *gogh*, and they were responsible for meting out tasks or giving orders to the members and associates of their respective group.  In essence, the elders were responsible for controlling the day-to-day and street-level criminal activity in their groups.  Under each elder, there were assorted members and/or non-member associates with authority and influence within the Armenian criminal community.

7.    Armenian Organized Crime also included individuals of influence called "*avtoritet*" (Russian: авторитет, English: person of significant authority) who, in Los Angeles County, commonly controlled their own Armenian Organized Crime groups and wielded power over other Armenian criminal organizations.

8.    *Avtoritet* frequently allied themselves with the Mexican Mafia or "*La Eme*" (English: the M), a criminal organization that operated within the state prison system, the federal prison system, and the streets and suburbs of large cities throughout Southern

4

California and oversaw the illegal activity of "*Sureños*" or "Southsiders" in the region.  Ergo, *avtoritet* not only had reputations and were notorious in the Armenian criminal community, but they were also well-known and respected in the Hispanic criminal underworld.

B.    THE ENTERPRISE

9.    Defendants ARA ARTUNI, aka "Ara Harutyunyan," "Aro," "Araboyi," "Arabo," "Santos," and "Edmond," ALEX AGOPIAN, aka "Alik," DAVIT HAZRYAN, aka "Davo," "Dav," and "D," VAHAGN STEPANYAN, aka "V," "Vee," "Vova Titov," "Juha Alver," "Vahan Stephanian," and "Aso Balvanov," ARVIN ALBERT KAZARYAN, aka "Artur" and "Art," AREG BEZIK, aka "Elvis Narek" and formerly known as "Narek Bezikian," MANUK MANUKYAN, aka "Briedis Malone," LEVON ARAKELYAN, CHRISTIAN SEDANO, aka "Bugsee," CARLOS ARMANDO OCHOA GRIMALDI, aka "Carlos Ochoa," "Spanky," CHRISTOPHER AYALA, aka "Hits," EDIR DE LA CRUZ, aka "Temper," JOSE DE JESUS GONZALEZ, JR., aka "Listo," MARIA DE JESUS MARES, aka "Maria de Jesus Marez," "Mari," "Mary Oceans," ANNA VALERII GHAZARYAN, aka "Anna Ghazaryan," and Edmon GAMAZYAN, and others known and unknown to the Grand Jury, were members and associates of a criminal organization (the "Artuni Enterprise") that engaged in, among other things, acts involving murder; wire fraud; financial institution fraud; theft from interstate shipments; forgery and false use of a passport; fraud and misuse of visas, permits, and other documents; and the use of interstate commerce facilities in the commission of murder-for-hire.

10.   The Artuni Enterprise was an Armenian Organized Crime group that operated in Los Angeles County and elsewhere with defendant ARTUNI at the helm.  As an *avtoritet*, defendant ARTUNI commanded

respect and occupied a position of power within the Armenian criminal community in the greater Los Angeles area.  Typical of the flat Armenian Organized Crime structure, defendant ARTUNI loosely commanded Armenian members of his organization and their family members, and he recruited and paid non-Armenian criminal associates, specifically, members and associates of *Sureño* street gangs, for the purpose of committing crimes at his behest.

11.  The Artuni Enterprise, including its leaders, members, and associates, constituted an "enterprise," as defined by Title 18, United States Code, Sections 1959(b)(2) and 1961(4), that is, a group of individuals associated in fact that was engaged in, and the activities of which affected, interstate and foreign commerce.  The Artuni Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

C.    PURPOSES OF THE ENTERPRISE

12.  The purposes of the Artuni Enterprise included, but were not limited to, the following:

a.    Enriching members and associates of the Artuni Enterprise, including its leader, defendant ARTUNI, through, among other things, the theft of interstate shipments and the commission of fraud in Los Angeles County and elsewhere;

b.    Fulfilling the personal desires of defendant ARTUNI, given his authority as an *avtoritet*, particularly those related to vendettas and his romantic gratification;

c.    Establishing control over Armenian communities within Los Angeles County;

d.   Preserving, protecting, promoting, and expanding the power of defendant ARTUNI and the Artuni Enterprise using intimidation, violence, and threats of violence; and

e.   Violently retaliating against rival Armenian Organized Crime groups or other members of the Armenian criminal community who challenged defendant ARTUNI or the Artuni Enterprise's authority or attempted to encroach upon defendant ARTUNI or the Artuni Enterprise's sphere of influence.

D.   MEANS AND METHODS OF THE ENTERPRISE

13.   The means and methods by which the members and associates of the Artuni Enterprise conducted and participated in the conduct of the affairs of the Artuni Enterprise included, but were not limited to, the following:

a.   Members and associates of the Artuni Enterprise stole from interstate shipments and committed fraud to generate revenue for the enterprise.

b.   Members and associates of the Artuni Enterprise engaged in the false and fraudulent use of identification documents to facilitate the commission of acts of violence and to circumvent United States immigration laws.

c.   Members and associates of the Artuni Enterprise promoted a climate of fear through acts of violence and threats to commit acts of violence.

d.   Members and associates of the Artuni Enterprise committed, attempted to commit, conspired to commit, and threatened to commit acts of violence, including assault and murder, to preserve, protect, promote, and expand the Artuni Enterprise's operations.

E.    THE DEFENDANTS

14.    Defendant ARTUNI, a self-reported Iranian citizen, United States permanent resident with asylee status in the United States, person of Armenian descent, and resident of the Central District of California, was an *avtoritet* within the Armenian Organized Crime community and led his own organized crime group (the Artuni Enterprise).

15.    Defendant AGOPIAN, a naturalized United States citizen who self-reported being born in Azerbaijanian and person of Armenian descent, was a member and associate of the Artuni Enterprise and a resident of the Central District of California.

16.    Defendant HAZRYAN, a naturalized United States citizen who was born in Armenia, was a member and associate of the Artuni Enterprise and a resident of the Central District of California.

17.    Defendant STEPANYAN, a derivative United States citizen who self-reported being born in the former USSR and was a person of Armenian descent, was a member and associate of the Artuni Enterprise and a resident of the Central District of California.  Defendant STEPANYAN was also a member of the *Sureño* street gang Elmwood Rifa 13.

18.    Defendant KAZARYAN, a natural-born United States citizen and person of Armenian descent, was a member and associate of the Artuni Enterprise and a resident of the Central District of California.

19.    Defendant BEZIK, a self-reported Iranian citizen, United States permanent resident who had asylee status in the United States, and person of Armenian descent, was a member and associate of the

8

Artuni Enterprise and a resident of the Central District of California.

20.  Defendant MANUKYAN, a self-reported citizen of the former USSR, person of Armenian descent, and United States permanent resident who had refugee status in the United States, was an associate of the Artuni Enterprise and a resident of the Central District of California.

21.  Defendant ARAKELYAN, a self-reported citizen of the former USSR and person of Armenian descent who was residing in the United States without lawful status, was an associate of the Artuni Enterprise and a resident of the Central District of California or imprisoned in the District of Nevada.

22.  Defendant SEDANO, a natural-born United States citizen, was an associate of the Artuni Enterprise and a resident of the Central District of California.  Defendant SEDANO was also a member of the *Sureño* street gang Elmwood Rifa 13.

23.  Defendant GRIMALDI, a derivative United States citizen who self-reported being born in Mexico, was an associate of the Artuni Enterprise and a resident of the Central District of California. Defendant GRIMALDI, also a documented member of the *Sureño* street gang Elmwood Rifa 13, was contracted by the Artuni Enterprise to engage in criminal conduct on behalf of the Artuni Enterprise.

24.  Defendant AYALA, a natural-born United States citizen, was an associate of the Artuni Enterprise and a resident of the Central District of California.  Defendant AYALA, also a documented member of the *Sureño* street gang Vanowen Street Locos, was contracted by the Artuni Enterprise to engage in criminal conduct on behalf of the Artuni Enterprise.

25. Defendant DE LA CRUZ, a natural-born United States citizen, was an associate of the Artuni Enterprise and a resident of the Central District of California.  Defendant DE LA CRUZ, also a documented member of the *Sureño* street gang Vanowen Street Locos, was contracted by the Artuni Enterprise to engage in criminal conduct on behalf of the Artuni Enterprise.

26. Defendant GONZALEZ, a natural-born United States citizen, was an associate of the Artuni Enterprise and a resident of the Central District of California.  Defendant GONZALEZ, also a documented member of the *Sureño* street gang Vanowen Street Locos, was contracted by the Artuni Enterprise to engage in criminal conduct on behalf of the Artuni Enterprise.

27. Defendant MARES, a person of undetermined citizenship, was an associate of the Artuni Enterprise and a resident of the Central District of California.  Defendant MARES, also an associate of the *Sureño* street gang Vanowen Street Locos, was contracted by the Artuni Enterprise to engage in criminal conduct on behalf of the Artuni Enterprise.

28. Defendant GHAZARYAN, an Armenian citizen who obtained Conditional Resident status through marriage fraud, was ARTUNI's romantic partner, an associate of the Artuni Enterprise, and a resident of the Central District of California.

29. Defendant GAMAZYAN, a naturalized United States citizen who was born in Armenia, was an associate of the Artuni Enterprise and a resident of the Central District of California.

F.   THE RACKETEERING CONSPIRACY

30. Beginning no later than in or around 2015, and continuing to in or around the present, in Los Angeles County, within the

Central District of California, and elsewhere, defendants ARTUNI, AGOPIAN, HAZRYAN, STEPANYAN, KAZARYAN, BEZIK, MANUKYAN, SEDANO, GRIMALDI, AYALA, DE LA CRUZ, GONZALEZ, MARES, GHAZARYAN, and GAMAZYAN, and others known and unknown to the Grand Jury, each being a person employed by and associated with the Artuni Enterprise, an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Artuni Enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), which pattern of racketing consisted of:

a.   Acts involving murder, chargeable under California Penal Code Sections 21a, 31, 182, 187, 189, and 664; and

b.   Acts indictable under:

i.   Title 18, United States Code, Section 659 (relating to theft from interstate shipments where the act indictable under the section is felonious);

ii.  Title 18, United States Code, Section 1343 (relating to wire fraud);

iii. Title 18, United States Code, Section 1344 (relating to financial institution fraud);

iv.  Title 18, United States Code, Section 1543 (relating to forgery or false use of a passport);

v.   Title 18, United States Code, Section 1546 (relating to fraud and misuse of visas, permits, and other documents); and

11

vi.  Title 18, United States Code, Section 1958 (relating to use of interstate commerce facilities in the commission of murder-for-hire).

31.  It was part of the conspiracy that each defendant agreed that a co-conspirator would commit at least two acts of racketeering in the conduct of the affairs of the Artuni Enterprise.

G.  MANNER AND MEANS OF THE CONSPIRACY

32.  The object of the conspiracy was to be accomplished, in substance, as follows:

a.  Defendants ARTUNI, AGOPIAN, HAZRYAN, STEPANYAN, SEDANO, GRIMALDI, AYALA, DE LA CRUZ, GONZALEZ, MARES, and GHAZARYAN, and others known and unknown to the Grand Jury, would direct, coordinate, assist in, or otherwise contribute to, the commission of violent crimes, including murder, attempted murder, and assault with a deadly weapon, to preserve, protect, promote, and expand the power of defendant ARTUNI and the Artuni Enterprise.

b.  Defendants STEPANYAN, SEDANO, GRIMALDI, AYALA, DE LA CRUZ, and GONZALEZ, and others known and unknown to the Grand Jury, would store and possess firearms and ammunition for the purpose of committing violent crimes on defendant ARTUNI and the Artuni Enterprise's behalf.

c.  Defendants HAZRYAN, KAZARYAN, BEZIK, MANUKYAN, and others known and unknown to the Grand Jury, would obtain motor vehicles to be used by members and associates of the Artuni Enterprise in furtherance of the enterprise's racketeering activities.

12

d.    Defendant STEPANYAN, and others known and unknown to the Grand Jury, would recruit and assign *Sureño* gang members to commit contract killings.

e.    Defendants HAZRYAN, STEPANYAN, KAZARYAN, BEZIK, and SEDANO, and others known and unknown to the Grand Jury, would execute and attempt to execute financial crimes, including fraud related to financial institutions and the wires, the proceeds of which would be paid to members and associates of the Artuni Enterprise. Specifically:

i.    Defendant HAZRYAN, and others known and unknown to the Grand Jury, would process credit card payments from willing participants, including defendants STEPANYAN and SEDANO, and others known and unknown to the Grand Jury, to pay for purported moving services provided by a company controlled by defendant HAZRYAN.  In reality, no moving services had been provided, and the credit cards were used to transfer funds from the credit card issuers -- whose accounts were insured by the Federal Deposit Insurance Corporation -- into bank accounts controlled by members of the conspiracy, including a business account at JPMorgan Chase Bank, N.A. ("Chase Bank") ending in -6361 (the "Chase Bank Business Account").

ii.    Once credit card payments were made, defendants AGOPIAN, HAZRYAN, BEZIK, and SEDANO, and others known and unknown to the Grand Jury, would drain the Chase Bank Business Account by (i) issuing checks, which were later deposited into different bank accounts or cashed; (ii) transferring the funds to a linked, external account; or (iii) wiring the money to an external account for the benefit of the co-conspirators and others.

13

iii. To maintain the scheme and maximize its profitability, the cardholders would dispute the transactions with the credit card issuers in order to have the charges removed from their balances.

f.    Defendant BEZIK, and others known and unknown to the Grand Jury, would masquerade as a legitimate member of Amazon.com, Inc.'s freight network to effectuate the theft of Amazon shipments, store the stolen Amazon products in a warehouse accessed by defendants ARTUNI, HAZRYAN, KAZARYAN, himself, and others known and unknown to the Grand Jury, and distribute the proceeds to members and associates of the Artuni Enterprise.

g.    Defendants ARTUNI, AGOPIAN, GHAZARYAN, and GAMAZYAN, and others known and unknown to the Grand Jury, would commit and facilitate the commission of marriage fraud so that defendant ARTUNI's romantic partner (defendant GHAZARYAN) could evade United States immigration laws.

H.    OVERT ACTS

33.  In furtherance of the racketeering conspiracy, and to accomplish its objects, on or about the following dates, defendants ARTUNI, AGOPIAN, HAZRYAN, STEPANYAN, KAZARYAN, BEZIK, MANUKYAN, SEDANO, GRIMALDI, AYALA, DE LA CRUZ, GONZALEZ, MARES, GHAZARYAN, and GAMAZYAN, together with others known and unknown to the Grand Jury, committed and willfully caused to be committed various overt acts within the Central District of California and elsewhere, including, but not limited to, the following:

**July 21, 2020: Shooting Targeting Victims 1 and 2 in Burbank, California**

14

Overt Act No. 1:    On or before June 30, 2020, defendant STEPANYAN purchased a prepaid cellular phone that he registered under the alias "Vova Titov" and used to communicate with a co-conspirator who was a documented member of Psycho Ass Life (PAL), a *Sureño* street gang ("CC-1").

Overt Act No. 2:    On June 30, 2020, in a series of text messages using coded language, defendant STEPANYAN asked CC-1 to contact him and informed CC-1 that he would provide him with clothes.

Overt Act No. 3:    On July 2, 2020, via text message, defendant STEPANYAN and CC-1 communicated regarding the latter's location.

Overt Act No. 4:    On July 2, 2020, CC-1 photographed a picture depicting Victim 1.

Overt Act No. 5:    On July 10, 2020, defendant STEPANYAN traveled to or near Victim 1 and 2's residence in Burbank, California.

Overt Act No. 6:    On July 13, 2020, defendant STEPANYAN traveled to or near Victim 1 and 2's residence.

Overt Act No. 7:    On July 16, 2020, defendant STEPANYAN and CC-1 met in person at Burger King in Glendale, California.

Overt Act No. 8:    On July 17, 2020, via text message and using coded language, CC-1 asked if defendant STEPANYAN could provide him with a vehicle.

Overt Act No. 9:    On July 17, 2020, via text message and using coded language, defendant STEPANYAN instructed CC-1 to take care of the vehicle defendant STEPANYAN provided him.

Overt Act No. 10:    On July 18, 2020, CC-1 traveled to or near Victim 1 and 2's residence.

15

Overt Act No. 11:   On July 18, 2020, via text message and using coded language, CC-1 informed defendant STEPANYAN that he decided not to attempt to murder Victim 1 that evening.

Overt Act No. 12:   Between July 20 and July 21, 2020, CC-1 traveled to Victim 1 and 2's residence in a black Mercedes-Benz bearing two stolen license plates.

Overt Act No. 13:   On July 21, 2020, CC-1 broke into Victim 1 and 2's residence.

Overt Act No. 14:   On July 21, 2020, CC-1, using a Polymer80 PB94DC 9mm firearm bearing no serial number (commonly referred to as a "ghost gun") with a silencer attached (the "Polymer80"), shot and killed Victim 1 while he was in bed with his wife (Victim 2).

Overt Act No. 15:   On July 21, 2020, CC-1, using the Polymer80, shot Victim 2 multiple times while she was in bed with Victim 1, causing her serious bodily injury.

Overt Act No. 16:   On July 21, 2020, via text message and using coded language, defendant STEPANYAN checked on CC-1's status.

Overt Act No. 17:   Between July 20 and July 22, 2020, after the shooting that killed Victim 1 and seriously injured Victim 2, defendant AGOPIAN obtained a new cellphone number.

Overt Act No. 18:   On July 22, 2020, via text message and using coded language, defendant AGOPIAN, using his new number, told defendant ARTUNI to text like everything was normal, which defendant ARTUNI agreed to do.

Overt Act No. 19:   On July 23, 2020, defendant STEPANYAN stopped using the prepaid cellular phone that he had registered under the alias "Vova Titov."

**June 12, 2023: Shooting Targeting Victim 3 in Los Angeles**

Overt Act No. 20:  On a date before June 12, 2023, defendant KAZARYAN, and others known and unknown to the Grand Jury, leased a blue BMW X6 M50 (the "BMW X6") for defendant BEZIK and registered the vehicle in defendant KAZARYAN's father's name.

Overt Act No. 21:  On June 12, 2023, defendant HAZRYAN traveled to or near a residence in Van Nuys, California where Victim 3 was located.

Overt Act No. 22:  On June 12, 2023, defendant ARTUNI traveled to or near a residence in Van Nuys where Victim 3 was located.

Overt Act No. 23:  On June 12, 2023, defendant HAZRYAN traveled to or near a Shell Gas Station in Reseda, California where Victim 3 was parked.

Overt Act No. 24:  On June 12, 2023, defendant STEPANYAN turned off or stopped using his cellular phone so that it would stop reporting Global Positioning System ("GPS") location data.

Overt Act No. 25:  On June 12, 2023, a member of the conspiracy driving the BMW X6 and a member of the conspiracy driving a GMC Acadia SUV (the "GMC SUV") stalked Victim 3 as Victim 3 traveled in and around the greater Los Angeles area.

Overt Act No. 26:  On June 12, 2023, a member of the conspiracy drove in front of Victim 3's vehicle in the BMW X6 and purposely caused Victim 3 to slow down at an intersection on Melvin Avenue and Devonshire Street in the San Fernando Valley.

Overt Act No. 27:  On June 12, 2023, a member of the conspiracy drove alongside Victim 3's vehicle in the GMC SUV, as Victim 3 slowly turned on to Melvin Avenue.

Overt Act No. 28:  On June 12, 2023, a member of the conspiracy in the GMC SUV, using a handgun, fired approximately eight rounds of

17

ammunition at Victim 3's vehicle from the GMC SUV, hitting the driver's side door approximately seven times.

Overt Act No. 29:   On June 12, 2023, members of the conspiracy fled from the intersection in the BMW X6 and GMC SUV.

Overt Act No. 30:   On June 12, 2023, following the shooting, defendant HAZRYAN fled from the vicinity of the shooting to a location in Tujunga, California.

Overt Act No. 31:   On June 12, 2023, following the shooting, defendant ARTUNI fled from the vicinity of the shooting to a location in Tujunga.

Overt Act No. 32:   Beginning on an unknown date and continuing to December 12, 2023, defendant HAZRYAN possessed aerial drone footage dated August 8, 2023, depicting Victim 3's residence on an iPhone 15 Pro ("iPhone 15 Pro").

**July 7, 2023: Shooting Targeting Victims 4 and 5 in Burbank**

Overt Act No. 33:   On June 23, 2023, via text message and using coded language, defendant GHAZARYAN provided defendant ARTUNI with photographs of Victim 4 and suggested means of obtaining additional photographs, following which defendant ARTUNI responded that he now had what he needed.

Overt Act No. 34:   On July 2, 2023, defendant HAZRYAN traveled to or near Victim 4 and 5's residence.

Overt Act No. 35:   Between July 4 and July 9, 2023, defendant HAZRYAN met with defendant ARTUNI at the latter's residence in Tujunga multiple times.

Overt Act No. 36:   Beginning on an unknown date and continuing to December 12, 2023, defendant ARTUNI possessed screenshots of a background check for Victim 4, which included a map depicting Victim

18

4 and 5's home address in Burbank, on an iPhone 14 Pro ("iPhone 14 Pro").

Overt Act No. 37:  On July 7, 2023, defendant SEDANO obtained a Google Street View image of the alleyway behind Victim 4 and 5's residence, which depicted Victim 4 and 5's balcony.

Overt Act No. 38:  On July 7, 2023, defendants ARTUNI and HAZRYAN traveled together in and around the greater Los Angeles area, including to a tire shop in Vernon, California (the "Tire Shop").

Overt Act No. 39:  On or before July 7, 2023, defendant MANUKYAN obtained a fraudulent United States Passport Card depicting his likeness and bearing the alias "Briedis Malone."

Overt Act No. 40:  On July 7, 2023, using the fraudulent passport card, defendant MANUKYAN purchased a red lifted Ford F-150 (the "F-150") for approximately $7,000 in cash at the Tire Shop.

Overt Act No. 41:  On July 7, 2023, defendant STEPANYAN traveled to a storage facility in Sun Valley, California (the "Storage Facility").

Overt Act No. 42:  On July 7, 2023, defendant STEPANYAN traveled on the 5 freeway towards Burbank.

Overt Act No. 43:  On July 7, 2023, defendants ARTUNI, STEPANYAN, and SEDANO either turned off or stopped using their cellular phones so that they would stop reporting GPS location data.

Overt Act No. 44:  On July 7, 2023, defendants HAZRYAN and BEZIK called each other multiple times.

Overt Act No. 45:  On July 7, 2023, defendant HAZRYAN engaged Victim 4 on a Facetime call.

Overt Act No. 46:  On July 7, 2023, defendant HAZRYAN traveled to or near Victim 4 and 5's residence.

19

Overt Act No. 47:   On July 7, 2023, a member of the conspiracy drove the F-150 defendant MANUKYAN had purchased that same day down an alleyway and stopped the F-150 right in front of Victim 4 and 5's balcony.

Overt Act No. 48:   On July 7, 2023, a member of the conspiracy, using a Glock, model 21, .45 Auto caliber semi-automatic pistol bearing serial number KDK598 with an attached auto sear (the "Glock"), and a 10mm pistol-type gun with an attached auto sear, stood up in the bed of the F-150 and fired at least 18 rounds of ammunition at the balcony where Victim 4 and his significant other (Victim 5) were seated, striking Victim 4 multiple times and causing him serious bodily injury.

Overt Act No. 49:   On July 7, 2023, after the shooting, members of the conspiracy fled from Victim 4 and 5's residence.

Overt Act No. 50:   On July 7, 2023, at an intersection in Burbank, a member of the conspiracy exited the bed of the F-150 and entered defendant SEDANO's gray Toyota Camry.

Overt Act No. 51:   On July 7, 2023, after the shooting, defendant STEPANYAN returned to the Storage Facility.

Overt Act No. 52:   On July 7, 2023, after the shooting, defendants ARTUNI and HAZRYAN fled from the vicinity of Victim 4 and 5's residence to Porter Ranch, California.

Overt Act No. 53:   On or after July 7, 2023, defendant HAZRYAN conducted an Internet search for "shooting in north Hollywood" on his iPhone 15 Pro.

Overt Act No. 54:   On December 12, 2023, defendants STEPANYAN and SEDANO, and others known and unknown to the Grand Jury, possessed

the Glock used in the shooting at Victim 4 and 5's residence, among other items, in Unit B16 at the Storage Facility.

**August 18, 2023: Shooting Targeting Victim 6 in North Hills, California**

Overt Act No. 55:   On or before August 18, 2023, defendant ARTUNI obtained aerial drone footage dated July 30, 2023, depicting Victim 6's residence and saved it on his iPhone 14 Pro.

Overt Act No. 56:   On August 18, 2023, defendant STEPANYAN traveled to or near Victim 6's residence in North Hills.

Overt Act No. 57:   On August 18, 2023, defendants ARTUNI, STEPANYAN, KAZARYAN, and SEDANO either turned off or stopped using their cellular phones so that they would stop reporting GPS location data.

Overt Act No. 58:   On August 18, 2023, defendant HAZRYAN traveled to or near Victim 6's residence in North Hills.

Overt Act No. 59:   On August 18, 2023, a member of the conspiracy drove to Victim 6's residence on a motorcycle.

Overt Act No. 60:   On August 18, 2023, a member of the conspiracy drove a pickup truck to Victim 6's residence.

Overt Act No. 61:   On August 18, 2023, the member of the conspiracy who arrived on the motorcycle retrieved, among other items, a step ladder from the pickup truck, used the ladder to climb up a wall surrounding Victim 6's residence, and fired approximately nine rounds of ammunition at Victim 6's residence.

Overt Act No. 62:   On August 18, 2023, members of the conspiracy fled from Victim 6's residence.

21

Overt Act No. 63:   On August 18, 2023, defendant HAZRYAN remained near Victim 6's residence in North Hills, later leaving North Hills and arriving in Van Nuys over an hour later.

**August 25, 2023: Shooting Targeting Victims 4, 6, 7, and Others in North Hills**

Overt Act No. 64:   On August 25, 2023, defendant HAZRYAN drove defendants ARTUNI and AGOPIAN to the Storage Facility in a dark Nissan Infiniti QX80 SUV (the "Infiniti SUV") registered in defendant KAZARYAN's father's name.

Overt Act No. 65:   On August 25, 2023, defendant STEPANYAN drove a white Mercedes-Benz S-Class (the "Mercedes-Benz") to the Storage Facility.

Overt Act No. 66:   On August 25, 2023, defendant STEPANYAN exited the Mercedes-Benz and entered the Infiniti SUV, which was occupied by defendants ARTUNI, AGOPIAN, and HAZRYAN.

Overt Act No. 67:   On August 25, 2023, defendants STEPANYAN and AGOPIAN exited the Infiniti SUV and entered the Mercedes-Benz, with defendant STEPANYAN in the driver's seat, and left the Storage Facility.

Overt Act No. 68:   On August 25, 2023, defendants STEPANYAN and AGOPIAN returned to the Storage Facility in the Mercedes-Benz.

Overt Act No. 69:   On August 25, 2023, defendants ARTUNI, AGOPIAN, HAZRYAN, and STEPANYAN entered the Storage Facility, with defendant STEPANYAN carrying a guitar case retrieved from the Mercedes-Benz and headed to Unit B16.

Overt Act No. 70:   On August 25, 2023, defendants ARTUNI, AGOPIAN, HAZRYAN, and STEPANYAN, who was carrying gray reflective gloves, exited the Storage Facility, with defendant AGOPIAN carrying

the guitar case, now containing firearms, which defendant AGOPIAN then placed into the Mercedes-Benz.

Overt Act No. 71:   On August 25, 2023, defendant STEPANYAN left the Storage Facility in the Mercedes-Benz.

Overt Act No. 72:   On August 25, 2023, defendants ARTUNI, AGOPIAN, and HAZRYAN left the Storage Facility in the Infiniti SUV, with defendant HAZRYAN in the driver's seat and defendants ARTUNI and AGOPIAN seated as passengers.

Overt Act No. 73:   From August 25 to August 26, 2023, defendant SEDANO either turned off or stopped using his cellular phone so that it would stop reporting GPS location data.

Overt Act No. 74:   On August 25, 2023, defendant ARTUNI traveled to or near Victim 6's residence.

Overt Act No. 75:   On August 25, 2023, defendant HAZRYAN traveled to or near Victim 6's residence.

Overt Act No. 76:   On August 25, 2023, defendant STEPANYAN traveled to or near Victim 6's residence.

Overt Act No. 77:   On August 25, 2023, defendant GONZALEZ traveled to or near Victim 6's residence.

Overt Act No. 78:   On August 25, 2023, defendant ARTUNI either turned off or stopped using his cellular phone so that it would stop reporting GPS location data.

Overt Act No. 79:   On August 25, 2023, a member of the conspiracy drove a gray pickup truck to a location facing the backyard of Victim 6's residence with two other members of the conspiracy in the bed of the truck along with a guitar case.

Overt Act No. 80:   On August 25, 2023, a member of the conspiracy, wearing gray reflective gloves, stood up in the bed of

23

the pickup truck and, using a rifle, fired at least 34 rounds of ammunition into the backyard of Victim 6's residence where Victims 4, 6, 7, and others were congregated, striking Victim 6 multiple times and causing Victim 6 serious bodily injury.

Overt Act No. 81:  On August 25, 2023, another member of the conspiracy, who was also in the bed of the pickup truck with a firearm, attempted to fire into the backyard of Victim 6's residence where Victims 4, 6, 7, and others were congregated.

Overt Act No. 82:  On August 25, 2023, after the shooting, the members of the conspiracy in the pickup truck fled from Victim 6's residence.

Overt Act No. 83:  On August 25, 2023, following the shooting, defendant HAZRYAN fled from the vicinity of Victim 6's residence, first to Granada Hills, California, and later to Porter Ranch.

Overt Act No. 84:  On August 25, 2023, after the shooting, defendant ARTUNI fled from the vicinity of Victim 6's residence to Northridge.

Overt Act No. 85:  On August 25, 2023, after the shooting, defendant STEPANYAN fled from the vicinity of Victim 6's residence.

Overt Act No. 86:  On August 25, 2023, after the shooting, defendant GONZALEZ first fled to or near defendant MARES' residence in Van Nuys, and later to Porter Ranch.

Overt Act No. 87:  On August 25, 2023, after the shooting, defendants STEPANYAN and GONZALEZ contacted each other on the phone multiple times.

Overt Act No. 88:  On August 26, 2023, defendants STEPANYAN and GONZALEZ entered the Storage Facility, with defendant STEPANYAN

24

carrying a weighted, white plastic bag retrieved from the Mercedez-Benz and headed to Unit B16.

Overt Act No. 89:   On May 17, 2025, defendant DE LA CRUZ conducted an Internet search for "rifle shooting in north hills."

Overt Act No. 90:   On May 28, 2025, defendant DE LA CRUZ conducted an Internet search for Victim 4.

Overt Act No. 91:   On May 31, 2025, defendant DE LA CRUZ conducted an Internet search for defendant STEPANYAN.

**November 9, 2023: Shooting Targeting Victim 8 in the Sunland Neighborhood of Los Angeles**

Overt Act No. 92:   On or before November 9, 2023, defendant ARTUNI advised Victim 8 that his associate would not be paying Victim 8 the money that Victim 8 believed he was owed.

Overt Act No. 93:   Beginning on an unknown date and continuing to June 5, 2025, defendant DE LA CRUZ possessed a photograph on his Samsung Galaxy S9+ ("Samsung") depicting a tan-colored Nissan Armada (the "Nissan Armada").

Overt Act No. 94:   On March 3, 2023, a white Toyota Camry (the "white Camry") was purchased using the personal identifying information of a third party and registered to an address associated with defendant HAZRYAN in Glendale.

Overt Act No. 95:   On August 10, 2023, defendant HAZRYAN attempted to make a one-time payment of $1,230.30 from a Bank of America account in the name of a sham canine business controlled by defendant HAZRYAN (DK9, Inc.) to Toyota Financial for the white Camry's lease.

25

Overt Act No. 96:   On November 9, 2023, defendant STEPANYAN arrived at the Storage Facility in the white Camry, carried a cardboard box inside, and headed toward Unit B16.

Overt Act No. 97:   On November 9, 2023, defendant STEPANYAN exited the Storage Facility, carrying a black case, which he placed into the white Camry before departing the Storage Facility.

Overt Act No. 98:   On November 9, 2023, defendants ARTUNI and SEDANO either turned off or stopped using their cellular phones so that they would stop reporting GPS location data.

Overt Act No. 99:   On November 9, 2023, defendant HAZRYAN traveled to or near a Starbucks in Los Angeles.

Overt Act No. 100:   On November 9, 2023, defendant STEPANYAN, driving the white Camry, arrived at the Starbucks, pulled into the parking lot, and parked across from the vehicle in which Victim 8 was sitting.

Overt Act No. 101:   On November 9, 2023, a member of the conspiracy driving the Nissan Armada entered the Starbucks parking lot and backed into an empty parking space in the parking lot.

Overt Act No. 102:   On November 9, 2023, defendant STEPANYAN accelerated through the Starbucks parking lot in the white Camry and departed.

Overt Act No. 103:   On November 9, 2023, a member of the conspiracy driving the Nissan Armada pulled out of the parking space and stopped, facing Victim 8's vehicle.

Overt Act No. 104:   On November 9, 2023, a member of the conspiracy, using a Century Arms, model C39v2, 7.62x39mm caliber rifle bearing serial number C39P2A01084 (the "Century Arms Rifle"), fired approximately six rounds of ammunition at Victim 8's vehicle,

26

striking Victim 8 multiple times and causing him serious bodily injury.

Overt Act No. 105: On November 9, 2023, after the shooting, a member of the conspiracy and defendant STEPANYAN drove in tandem while fleeing from the Starbucks.

Overt Act No. 106: On November 9, 2023, defendant HAZRYAN fled from the vicinity of the Starbucks to Tujunga.

Overt Act No. 107: On November 10 and November 11, 2023, defendant HAZRYAN conducted the following Internet searches: "shooting in tujunga today," "Man shot in Tujunga," "shooting in tujunga star bucks," "SUNLAND-TUJUNGA AREA EMERGENCY POLICE-FIRE SCANNER NEWS," "Tujunga police activity today," and "Sunland tujunga police activity today."

Overt Act No. 108: On December 12, 2023, defendants STEPANYAN and SEDANO, and others known and unknown to the Grand Jury, possessed the Century Arms Rifle in Unit B16 at the Storage Facility.

Overt Act No. 109: On May 17, 2025, defendant DE LA CRUZ conducted an Internet search for "sunland Starbucks shooting."

**March 14, 2025: Contract Shooting Targeting Victim 4 and Injuring Victim 5 in Los Angeles**

Overt Act No. 110: On an unknown date, defendants STEPANYAN, GRIMALDI, AYALA, DE LA CRUZ, and MARES, and others known and unknown to the Grand Jury, agreed to murder Victim 4.

Overt Act No. 111: On January 9, 2025, defendant MARES purchased the getaway vehicle, a silver-colored Audi (the "Audi"), via Facebook Marketplace.

Overt Act No. 112:  On January 16, 2025, defendants STEPANYAN, GRIMALDI, and DE LA CRUZ stalked Victim 4 at or near his residence in Los Angeles.

Overt Act No. 113:  On February 15, 2025, via phone call and using coded language, defendant AYALA told defendant DE LA CRUZ, who was incarcerated, that he and defendants STEPANYAN and GRIMALDI were continuing to prepare for Victim 4's murder, and once Victim 4 was dead, they would pay defendant DE LA CRUZ.

Overt Act No. 114:  On February 25, 2025, defendant AYALA, and others known and unknown, traveled to Victim 4's residence for the purpose of murdering him but ultimately decided against it because his significant other (Victim 5) and minor children (Victims 9 and 10) were present.

Overt Act No. 115:  On or before February 28, 2025, defendant STEPANYAN recruited defendant MARES to take defendant AYALA's place as the getaway driver and agreed to compensate her.

Overt Act No. 116:  On February 28, 2025, defendant GRIMALDI electronically cashed a check for $8,560 at Bank of America.

Overt Act No. 117:  On February 28, 2025, defendants STEPANYAN, GRIMALDI, and MARES, and others known and unknown to the Grand Jury, traveled to or near Victim 4's residence for the purpose of murdering him but ultimately decided against it because his significant other (Victim 5) and minor children (Victims 9 and 10) were present.

Overt Act No. 118:  Between March 3 and March 6, 2025, via phone calls and using coded language, defendant DE LA CRUZ, who was incarcerated, coached defendant MARES on how to demonstrate her preparedness for participating in Victim 4's murder to defendant STEPANYAN.

Overt Act No. 119:  On or before March 6, 2025, defendant STEPANYAN instructed defendant MARES to be on "standby" to participate in Victim 4's murder.

Overt Act No. 120:  On March 14, 2025, defendants STEPANYAN, GRIMALD, and MARES, and others known and unknown, traveled to or near Victim 4, 5, 9, and 10's residence in Los Angeles.

Overt Act No. 121:  On March 14, 2025, defendant MARES either turned off or stopped using her cellular phone so that it would stop reporting GPS location data.

Overt Act No. 122:  On March 14, 2025, defendants STEPANYAN and GRIMALDI fired approximately 25 rounds of ammunition at a vehicle occupied by Victims 5, 9, and 10, striking Victim 5 and causing her serious bodily injury.

Overt Act No. 123:  On March 14, 2025, after the shooting, defendants STEPANYAN, GRIMALDI, MARES, and others known and unknown to the Grand Jury, fled from the vicinity of Victim 4, 5, 9, and 10's residence in the Audi.

Overt Act No. 124:  On March 14, 2025, after the shooting, defendant MARES traveled to her residence in Van Nuys.

Overt Act No. 125:  On March 15, 2025, via phone call and using coded language, defendant MARES told defendant DE LA CRUZ, who was incarcerated, that she believed Victim 4 was dead, and she would be receiving $50,000 for her role in his murder.

Overt Act No. 126:  On March 16, 2025, via phone call and using coded language, defendant MARES told defendant DE LA CRUZ, who was incarcerated, that because Victim 4 had not died, she did not think she would be getting paid, and defendant DE LA CRUZ responded by coaching her on how to get payment from defendant STEPANYAN.

29

Overt Act No. 127:  On March 17, 2025, via phone call and using coded language, defendant MARES told defendant DE LA CRUZ, who was incarcerated, that she did not believe she would be getting paid because Victim 5 was injured, and Victim 4 had not died.

Overt Act No. 128:  Between March 17 and March 18, 2025, via phone call and using coded language, defendant DE LA CRUZ, who was incarcerated, instructed defendant MARES to contact defendant STEPANYAN and tell him to pay her.

Overt Act No. 129:  On March 19, 2025, via phone call and using coded language, defendant MARES told defendant DE LA CRUZ, who was incarcerated, that defendant STEPANYAN was going to pay her $10,000 for her role in the shooting on March 14, 2025.

Overt Act No. 130:  On March 19, 2025, via phone call and using coded language, defendant MARES told defendant DE LA CRUZ, who was incarcerated, that defendant STEPANYAN had paid her.

**March 28, 2025: Shooting Targeting Victim 7 in Los Angeles**

Overt Act No. 131:  Starting on or before March 23 and continuing to March 28, 2025, defendant MARES searched for a getaway vehicle to purchase for use during an attempt on Victim 7's life.

Overt Act No. 132:  On March 27, 2025, defendant MARES attempted to purchase a blue Dodge Journey SE Sport Utility 4D (the "Dodge Journey") via Facebook Marketplace.

Overt Act No. 133:  On March 27, 2025, via text message and using coded language, defendant GRIMALDI sent defendant STEPANYAN a Facebook Marketplace link to the Dodge Journey and sought his permission for defendant MARES to purchase it.

30

Overt Act No. 134:  On or before March 28, 2025, defendant DE LA CRUZ obtained a photograph of the getaway vehicle, a silver Honda Odyssey (the "Honda Odyssey"), and saved it on his Samsung.

Overt Act No. 135:  On March 28, 2025, defendant DE LA CRUZ traveled to or near Victim 7's residence in Los Angeles.

Overt Act No. 136:  On March 28, 2025, a member of the conspiracy fired approximately 15 rounds of ammunition at a vehicle occupied by Victim 7, striking him multiple times and causing him serious bodily injury.

**Freedom At Enterprise, Inc. Credit Card Fraud Scheme**

Overt Act No. 137:  On July 8, 2015, a co-conspirator ("CC-2") incorporated Freedom At Enterprise, Inc., a purported moving company, in Delaware County, within the Eastern District of Pennsylvania, designating CC-2 as the agent in the State of Pennsylvania.

Overt Act No. 138:  On August 26, 2020, CC-2 incorporated Freedom At Enterprise, Inc. in Los Angeles County, within the Central District of California, designating CC-2 as the agent in the State of California.

Overt Act No. 139:  On January 13, 2021, CC-2 opened a Chase Bank business checking account ending in -6361 (the Chase Bank Business Account), designating CC-2 as the account owner.

Overt Act No. 140:  On October 10, 2023, a photograph of a Chase Bank business debit card bearing CC-2's name was saved onto defendant HAZRYAN's iPhone 15 Pro.

Overt Act No. 141:  On October 10, 2023, photographs depicting a printout listing first and last initials, phone numbers, email addresses, credit card limits, and addresses for individuals, including, but not limited to, defendants STEPANYAN and SEDANO, and

others known and unknown to the Grand Jury, were saved onto defendant HAZRYAN's iPhone 15 Pro.

Overt Act No. 142:  On an unknown date, a Google email address was created for Freedom At Enterprise, Inc., which was managed and controlled by defendant HAZRYAN.

Overt Act No. 143:  On October 2, 2023, defendant HAZRYAN caused a transfer of $5,000 from the Chase Bank Business Account into a Zelle account he controlled.

Overt Act No. 144:  On October 6, 2023, defendant HAZRYAN caused a transfer of $600 from the Chase Bank Business Account into a Zelle account he controlled.

Overt Act No. 145:  On October 6, 2023, defendant AGOPIAN caused a check for $8,000 from Freedom At Enterprise, Inc. to be deposited into his Citibank, N.A. ("Citibank") account.

Overt Act No. 146:  On October 10, 2023, defendant HAZRYAN caused a transfer of $200 from the Chase Bank Business Account into a Zelle account he controlled.

Overt Act No. 147:  On October 10, 2023, defendant HAZRYAN caused a transfer of $700 from the Chase Bank Business Account into a Zelle account he controlled.

Overt Act No. 148:  On October 13, 2023, defendant HAZRYAN caused a transfer of $1,500 from the Chase Bank Business Account into a Zelle account he controlled.

Overt Act No. 149:  On October 16, 2023, defendant HAZRYAN caused a transfer of $900 from the Chase Bank Business Account into a Zelle account he controlled.

Overt Act No. 150:  On October 19, 2023, defendant HAZRYAN caused a transfer of $1,500 from the Chase Bank Business Account into a Zelle account he controlled.

Overt Act No. 151:  On October 19, 2023, defendant BEZIK caused a check for $20,860 from Freedom At Enterprise, Inc. to be cashed at A to Z Check Cashing in Glendale ("A to Z").

Overt Act No. 152:  On October 20, 2023, defendant BEZIK caused a check for $5,880 from Freedom At Enterprise, Inc. to be cashed at A to Z.

Overt Act No. 153:  On October 23, 2023, defendant HAZRYAN caused a transfer of $1,500 from the Chase Bank Business Account into a Zelle account he controlled.

Overt Act No. 154:  On October 24, 2023, defendant BEZIK caused a check for $37,635 from Freedom At Enterprise, Inc. to be cashed at A to Z.

Overt Act No. 155:  On October 26, 2023, defendant HAZRYAN caused a transfer of $1,500 from the Chase Bank Business Account into a Zelle account he controlled.

Overt Act No. 156:  On October 28, 2023, defendant BEZIK caused a check for $8,100 from Freedom At Enterprise, Inc. to be cashed at A to Z.

Overt Act No. 157:  On October 28, 2023, via text message using coded language, defendant HAZRYAN sent a co-conspirator ("CC-3") "Freedom at enterprise inc, $28150" and included the address for a commercial mail receiving center in Burbank.

Overt Act No. 158:  On October 30, 2023, defendant HAZRYAN caused a transfer of $1,000 from the Chase Bank Business Account into a Zelle account he controlled.

Overt Act No. 159:  On November 1, 2023, defendant HAZRYAN caused a transfer of $2,000 from the Chase Bank Business Account into a Zelle account he controlled.

Overt Act No. 160:  On November 2, 2023, defendant BEZIK caused a check for $51,783 from Freedom At Enterprise, Inc. to be cashed at A to Z.

Overt Act No. 161:  On November 3, 2023, defendant HAZRYAN caused a transfer of $2,000 from the Chase Bank Business Account into a Zelle account he controlled.

Overt Act No. 162:  On November 3, 2023, defendant HAZRYAN caused a transfer of $500 from the Chase Bank Business Account into a Zelle account he controlled.

Overt Act No. 163:  On November 5, 2023, via text message, defendant HAZRYAN sent himself a screenshot of a Quickbooks statement for Freedom At Enterprise, Inc. from August 1 to August 31, 2023, indicating a total gross transaction amount of $312,636.

Overt Act No. 164:  On November 5, 2023, via text message, defendant HAZRYAN sent himself a screenshot of a Quickbooks statement for Freedom At Enterprise, Inc. from September 1 to September 30, 2023, indicating a total gross transaction amount of $213,951.30.

Overt Act No. 165:  On November 5, 2023, via text message, defendant HAZRYAN sent himself a screenshot of a Quickbooks statement for Freedom At Enterprise, Inc. from October 1 to October 31, 2023, indicating a total gross transaction amount of $97,951.30.

Overt Act No. 166:  On November 6, 2023, defendant AGOPIAN received an $8,000 wire from the Chase Bank Business Account into his Citibank account.

Overt Act No. 167:  On November 7, 2023, defendant AGOPIAN received a $20,000 wire from the Chase Bank Business Account into his Citibank account.

Overt Act No. 168:  On November 7, 2023, defendant HAZRYAN caused a transfer of $1,200 from the Chase Bank Business Account into a Zelle account he controlled.

Overt Act No. 169:  On November 8, 2023, defendant BEZIK caused a check for $21,975 from Freedom At Enterprise, Inc. to be cashed at Tres Hermanos Market in Panorama City, California.

Overt Act No. 170:  On November 8, 2023, defendant HAZRYAN caused a transfer of $700 from the Chase Bank Business Account into a Zelle account he controlled.

Overt Act No. 171:  On November 9, 2023, defendant HAZRYAN caused a transfer of $1,000 from the Chase Bank Business Account into a Zelle account he controlled.

Overt Act No. 172:  On November 10, 2023, defendant HAZRYAN caused a transfer of $860 from the Chase Bank Business Account into a Zelle account he controlled.

Overt Act No. 173:  On November 11, 2023, via text messages and using coded language, a co-conspirator ("CC-4") asked defendant HAZRYAN for documentation CC-4 could provide the bank relating to Freedom At Enterprise, Inc. to support a dispute claim.

Overt Act No. 174:  On November 14, 2023, defendant AGOPIAN caused a $20,000 wire from the Chase Bank Business Account to be sent to his Citibank account.

Overt Act No. 175:  On November 16, 2023, defendant BEZIK caused a check for $8,595 from Freedom At Enterprise, Inc. to be cashed at A to Z.

Overt Act No. 176:  On November 16, 2023, defendant HAZRYAN caused a transfer of $1,000 from the Chase Bank Business Account into a Zelle account he controlled.

Overt Act No. 177:  On November 17, 2023, defendant HAZRYAN caused a transfer of $2,000 from the Chase Bank Business Account into a Zelle account he controlled.

Overt Act No. 178:  On November 19, 2023, defendant HAZRYAN saved a photograph of an email from Wells Fargo Bank regarding a dispute to a charge to Freedom At Enterprise, Inc. for $10,400 onto his iPhone 8.

Overt Act No. 179:  On November 20, 2023, defendant HAZRYAN caused a transfer of $380 from the Chase Bank Business Account into a Zelle account he controlled.

Overt Act No. 180:  On November 20, 2023, defendant HAZRYAN caused a transfer of $760 from the Chase Bank Business Account into a Zelle account he controlled

Overt Act No. 181:  On November 22, 2023, defendant HAZRYAN saved a photograph of a check payable to defendant SEDANO dated November 20, 2023, for $6,050, onto his iPhone 8.

Overt Act No. 182:  On November 22, 2023, defendant HAZRYAN saved a photograph of a check payable to defendant SEDANO dated November 21, 2023, for $5,150 onto his iPhone 8.

Overt Act No. 183:  On November 20, 2023, via text message using coded language, defendant HAZRYAN sent CC-3 a $28,150 invoice from Freedom At Enterprise Inc. for an individual bearing the initials Y.H. at Johnny and Son Trucking Inc with an email address of "Abodispatch@gmail.com."

Overt Act No. 184:  On November 21, 2023, via text message and using coded language, defendant HAZRYAN asked CC-3 for his email, to which CC-3 replied "abodispatch@gmail.com."

Overt Act No. 185:  On November 21 and November 22, 2023, defendants HAZRYAN and STEPANYAN exchanged email messages to make it falsely appear that Freedom At Enterprise, Inc. had canceled moving services that defendant STEPANYAN had booked in connection with a $29,450 invoice.

Overt Act No. 186:  On November 22, 2023, defendants HAZRYAN and SEDANO exchanged email messages to make it falsely appear that Freedom At Enterprise, Inc. had canceled moving services that defendant SEDANO had booked in connection with a $14,185 invoice.

Overt Act No. 187:  On November 22, 2023, defendant HAZRYAN and CC-3 exchanged email messages to make it falsely appear that Freedom At Enterprise, Inc. had canceled moving services that CC-3 had booked in connection with a $28,150 invoice.

Overt Act No. 188:  On November 22, 2023, defendant SEDANO caused a check for $5,150 from Freedom At Enterprise, Inc. to be deposited into a Chase Bank account.

Overt Act No. 189:  On November 22, 2023, defendant SEDANO caused a check for $6,050 from Freedom At Enterprise, Inc. to be deposited into a Bank of Montreal bank account.

Overt Act No. 190:  On November 22, 2023, defendant HAZRYAN caused a transfer of $570 from the Chase Bank Business Account into a Zelle account he controlled.

Overt Act No. 191:  On November 22, 2023, defendant AGOPIAN caused a $10,000 wire to be sent from the Chase Bank Business Account to his Citibank account.

37

Overt Act No. 192:  On November 23 and November 24, 2023, defendants HAZRYAN and SEDANO exchanged email messages to make it falsely appear that Freedom At Enterprise, Inc. had canceled moving services that defendant SEDANO had booked in connection with a $12,100 invoice.

Overt Act No. 193:  On November 24, 2023, defendant HAZRYAN caused a transfer of $2,400 from the Chase Bank Business Account into a Zelle account he controlled.

Overt Act No. 194:  On November 24, 2023, defendant HAZRYAN saved a photograph of an invoice for $5,463 dated November 13, 2023, from Freedom At Enterprise, Inc. onto his iPhone 8.

Overt Act No. 195:  On November 25, 2023, defendant HAZRYAN saved a photograph of an invoice for $5,463 from Freedom At Enterprise, Inc. onto his iPhone 8.

Overt Act No. 196:  On November 25, 2023, defendant HAZRYAN saved a photograph of an invoice for $7,956 dated November 11, 2023, from Freedom At Enterprise, Inc. onto his iPhone 8.

Overt Act No. 197:  Between November 25, 2023, and November 27, 2023, defendant HAZRYAN caused $1,300 to be transferred from the Chase Bank Business Account into a Zelle account he controlled.

Overt Act No. 198:  On November 30, 2023, defendant HAZRYAN saved a photograph of an invoice for $14,250 dated November 16, 2023, from Freedom At Enterprise, Inc. onto his iPhone 8.

Overt Act No. 199:  On December 7, 2023, via text message using coded language, defendant HAZRYAN requested that CC-4 relay to the owner of the credit card that she should permit a transaction charged by him to go through.

**NBA Holdings, LLC Amazon Cargo Theft Scheme**

Overt Act No. 200:  On November 17, 2015, defendant BEZIK filed Articles of Organization for Sierra Transportation Services, LLC, registering it as a limited liability company with the California Secretary of State.

Overt Act No. 201:  On December 4, 2018, a co-conspirator ("CC-5") filed an amendment to the Articles of Organization for Sierra Transportation Services, LLC, changing its name to NBA Holdings, LLC and claiming that it was an interior and exterior design business.

Overt Act No. 202:  On July 15, 2021, CC-5 opened a business checking account at Bank of America (ending in -1669), listing CC-5 as the accountholder.

Overt Act No. 203:  On July 15, 2021, defendant BEZIK registered NBA Holdings, LLC with Amazon as a cargo relay carrier.

Overt Act No. 204:  On July 20, 2021, CC-5 opened a business checking account at Bank of America (ending in -0244), listing CC-5 as the accountholder.

Overt Act No. 205:  On October 3, 2021, NBA Holdings, LLC booked a contracted route to transport goods from a distribution center located in City of Industry, California to the Amazon fulfillment warehouse located in Lacey, Washington.

Overt Act No. 206:  On October 5, 2021, a driver associated with NBA Holdings, LLC ("CC-6") arrived at the City of Industry distribution center.

Overt Act No. 207:  On October 5, 2021, CC-6 departed from the City of Industry distribution center with an Amazon trailer,

39

including approximately 980 Elite Gourmet Toasters collectively valued at approximately $28,096.60.

Overt Act No. 208:  On October 8, 2021, CC-6 arrived at the Lacey warehouse approximately three days after the scheduled arrival date with the 980 toasters missing.

Overt Act No. 209:  On November 5, 2021, NBA Holdings, LLC booked a contracted route to transport goods from a distribution center located in Lynwood, California to an Amazon fulfillment warehouse located in Aurora, Colorado.

Overt Act No. 210:  On November 8, 2021, a driver associated with NBA Holdings, LLC ("CC-7") arrived at the Lynwood distribution center.

Overt Act No. 211:  On November 9, 2021, CC-7 departed from the Lynwood distribution center with an Amazon trailer, including, among other items, approximately 534 Android Smart TVs collectively valued at approximately $104,845.56.

Overt Act No. 212:  On November 15, 2021, CC-7 arrived at the Aurora warehouse approximately four days after the scheduled arrival date with the 534 Android Smart TVs missing.

Overt Act No. 213:  On February 6, 2022, defendant ARTUNI caused a $5,000 transfer from NBA Holdings, LLC to be sent to a Zelle account in defendant GHAZARYAN's name and controlled by him.

Overt Act No. 214:  On March 24, 2022, defendant ARTUNI caused a $2,500 transfer from NBA Holdings, LLC to be sent to a Zelle account in defendant GHAZARYAN's name and controlled by him.

Overt Act No. 215:  On April 27, 2022, defendant KAZARYAN caused a $20,000 wire from NBA Holdings, LLC to be sent to a U.S. Bancorp ("U.S. Bank") account he controlled.

Overt Act No. 216:  On September 9, 2022, defendant KAZARYAN caused a check for $5,000 from NBA Holdings, LLC to be deposited into a U.S. Bank account in his father's name.

Overt Act No. 217:  On September 13, 2022, defendant KAZARYAN caused a transfer of $1,000 from NBA Holdings, LLC to a Zelle account he controlled.

Overt Act No. 218:  On September 13, 2022, defendant KAZARYAN caused a transfer of $5,000 from NBA Holdings, LLC to a Zelle account he controlled.

Overt Act No. 219:  On September 20, 2022, defendant KAZARYAN caused a check for $3,500 from NBA Holdings, LLC to be deposited into a U.S. Bank account in his father's name.

Overt Act No. 220:  On September 21, 2022, defendant KAZARYAN caused a check for $6,362 from NBA Holdings, LLC to be deposited into a U.S. Bank account in his father's name.

Overt Act No. 221:  On September 27, 2022, defendant BEZIK caused a check for $10,000 from NBA Holdings, LLC to be deposited.

Overt Act No. 222:  On October 21, 2022, defendant KAZARYAN caused a check for $3,500 from NBA Holdings, LLC to be deposited into a U.S. Bank account in his father's name.

Overt Act No. 223:  On October 25, 2022, defendant ARTUNI caused a $5,000 transfer from NBA Holdings, LLC to be sent to a Zelle account in defendant GHAZARYAN's name and controlled by him.

Overt Act No. 224:  On October 27, 2022, defendant BEZIK received a $54,000 wire from NBA Holdings, LLC into a Comerica Bank account he controlled.

41

Overt Act No. 225:  On November 2, 2022, defendant BEZIK received a $86,000 wire from NBA Holdings, LLC into a Comerica Bank account he controlled.

Overt Act No. 226:  On November 7, 2022, defendant KAZARYAN caused a check for $8,000 from NBA Holdings, LLC to be deposited into a U.S. Bank account in his father's name.

Overt Act No. 227:  On November 30, 2022, defendant BEZIK received a $46,000 wire from NBA Holdings, LLC into a Comerica Bank account he controlled.

Overt Act No. 228:  On December 1, 2022, defendant KAZARYAN caused a check for $4,000 from NBA Holdings, LLC to be deposited into a U.S. Bank account in his father's name.

Overt Act No. 229:  On January 10, 2023, defendant KAZARYAN caused a check for $3,500 from NBA Holdings, LLC to be deposited into a U.S. Bank account in his father's name.

Overt Act No. 230:  On January 31, 2023, defendant BEZIK received a $30,000 wire from NBA Holdings, LLC into a Comerica Bank account he controlled.

Overt Act No. 231:  On February 1, 2023, defendant KAZARYAN caused a transfer of $2,800 from NBA Holdings, LLC to a Zelle account he controlled.

Overt Act No. 232:  On February 1, 2023, defendant AGOPIAN received a $40,000 wire from NBA Holdings, LLC into his Citibank account.

Overt Act No. 233:  On February 6, 2023, defendant ARTUNI caused a $5,000 transfer from NBA Holdings, LLC to be sent to a Zelle account in defendant GHAZARYAN's name and controlled by him.

Overt Act No. 234:  On February 13, 2023, defendant BEZIK received a $53,000 wire from NBA Holdings, LLC into a Comerica Bank account he controlled.

Overt Act No. 235:  On February 21, 2023, defendant AGOPIAN received an $80,000 wire from NBA Holdings, LLC into his Citibank account.

Overt Act No. 236:  On or about February 23, 2023, defendant ARTUNI caused a $5,000 transfer from NBA Holdings, LLC to be sent to a Zelle account in defendant GHAZARYAN's name and controlled by him.

Overt Act No. 237:  On March 9, 2023, defendant BEZIK received a $15,000 wire transfer from NBA Holdings, LLC into a Comerica Bank account he controlled.

Overt Act No. 238:  On April 7, 2023, defendant BEZIK received an $18,500 wire transfer from NBA Holdings, LLC into a Comerica Bank account he controlled.

Overt Act No. 239:  On May 3, 2023, defendant BEZIK received a $47,000 wire transfer from NBA Holdings, LLC into a Comerica Bank account he controlled.

**Marriage Fraud Scheme**

Overt Act No. 240:  On May 16, 2018, defendant GAMAZYAN signed a divorce decree, finalizing his divorce from his then-wife.

Overt Act No. 241:  On May 17, 2019, defendant GAMAZYAN caused his divorce decree to be electronically filed with a court.

Overt Act No. 242:  On May 24, 2018, defendant ARTUNI asked defendant GAMAZYAN for his date of birth, which defendant GAMAZYAN provided.

Overt Act No. 243: On May 25, 2018, defendant ARTUNI sent defendant GAMAZYAN screenshots of a flight itinerary to Armenia, and defendant GAMAZYAN responded, "ok."

Overt Act No. 244: On May 25, 2018, defendant GAMAZYAN sent defendant ARTUNI a phone bill in defendant GAMAZYAN's name.

Overt Act No. 245: On June 4, 2018, defendant GAMAZYAN traveled from the United States to Armenia and returned on June 19, 2018.

Overt Act No. 246: On June 10, 2018, defendant GAMAZYAN sent defendant ARTUNI a phone bill in defendant GAMAZYAN's name.

Overt Act No. 247: On or before June 19, 2018, defendants GAMAZYAN and GHAZARYAN staged a sham marriage proposal and caused it to be photographed.

Overt Act No. 248: On July 19, 2019, defendant ARTUNI sent sham engagement photographs depicting defendants GHAZARYAN and GAMAZYAN to CC-9.

Overt Act No. 249: On August 1, 2018, defendant GHAZARYAN caused an official statement to be filed with the United States Citizenship and Immigration Services ("USCIS") declaring her intent to marry defendant GAMAZYAN.

Overt Act No. 250: On August 6, 2018, defendant GAMAZYAN caused an official statement to be filed with USCIS declaring his intent to marry defendant GHAZARYAN.

Overt Act No. 251: On August 6, 2018, defendant GAMAZYAN caused an application to be submitted to USCIS for a K1 Non-Immigrant Visa (non-immigrant fiancé(e) visa, USCIS Form I-129F) for defendant GHAZARYAN.

Overt Act No. 252: On August 7, 2018, defendant GAMAZYAN texted photographs of himself to defendant ARTUNI.

44

Overt Act No. 253:  On February 14, 2019, defendant ARTUNI texted CC-9 several photographs of a letter issued from USCIS requesting that GAMAZYAN submit a new passport-style photograph.

Overt Act No. 254:  On March 19, 2019, defendant GHAZARYAN obtained a Visa for Fiancé(e)s of United States Citizens (a K-1 Visa).

Overt Act No. 255:  On April 16, 2019, defendant ARTUNI asked CC-9 to provide a status update on defendant GHAZARYAN's immigration application.

Overt Act No. 256:  On May 6, 2019, defendant ARTUNI sent CC-9 a photograph of instructions regarding the Non-Immigrant Visa Application in the Armenian language.

Overt Act No. 257:  On May 6, 2019, defendant ARTUNI informed CC-9 that he had spoken with defendant GAMAZYAN and that he intended to pick up defendant GAMAZYAN's tax documents and bring them to CC-9.

Overt Act No. 258:  On May 6, 2019, defendant ARTUNI asked CC-9 how much taxable income a sponsor needs to have and what documents a sponsor needs to provide to USCIS.

Overt Act No. 259:  On May 6, 2019, defendant GAMAZYAN sent defendant ARTUNI his address.

Overt Act No. 260:  On May 16, 2019, defendant ARTUNI sent defendant GAMAZYAN a flight itinerary to Armenia.

Overt Act No. 261:  On May 20, 2019, defendant GAMAZYAN caused an Affidavit of Support (USCIS Form I-134) for defendant GHAZARYAN to be filed with USCIS.

Overt Act No. 262:  On May 21, 2019, defendant GAMAZYAN traveled from the United States to Armenia.

45

Overt Act No. 263:  On May 24, 2019, defendant AGOPIAN sent defendant ARTUNI photographs depicting CC-8's Permanent Resident Card, Armenian passport, W-2, and Form 1099, and asked defendant ARTUNI if it was "ok".

Overt Act No. 264:  On May 24, 2019, defendant ARTUNI forwarded CC-8's personal identifying documents to CC-9 for the purpose of these documents being submitted to USCIS and CC-8 serving as defendant GHAZARYAN's sponsor.

Overt Act No. 265:  On or before July 10, 2019, defendant GHAZARYAN instructed defendant GAMAZYAN on what he should state as their first shared address in the United States.

Overt Act No. 266:  On July 15, 2019, defendant GHAZARYAN traveled from Armenia to the United States.

Overt Act No. 267:  On August 6, 2019, defendants GHAZARYAN and GAMAZYAN obtained a confidential license and certificate of marriage.

Overt Act No. 268:  On August 26, 2019, defendant GHAZARYAN texted CC-8 that she was getting married on that date.

Overt Act No. 269:  On August 26, 2019, defendants GHAZARYAN and GAMAZYAN conducted a sham marriage ceremony and caused it to be videotaped.

Overt Act No. 270:  On September 26, 2019, defendant GAMAZYAN caused a Petition for Alien Relative (USCIS Form I-130) for defendant GHAZARYAN to be filed with USCIS to adjust her status from a K1 Non-Immigration Visa for Fiancé(e) to that of a Conditional Resident.

Overt Act No. 271:  On an unknown date, defendant GHAZARYAN emailed CC-9 Viber conversations between her and defendant ARTUNI, who was using the iPhone X and pretending to be defendant GAMAZYAN, for the purpose of submitting these conversations to USCIS.

46

Overt Act No. 272:  On an unknown date, defendant ARTUNI saved a screenshot of defendant GHAZARYAN's email to CC-9 memorializing her Viber conversations with him onto his iPhone X.

Overt Act No. 273:  On June 12, 2020, defendants GHAZARYAN and GAMAZYAN staged a sham wedding ceremony in which defendant AGOPIAN and CC-8 participated and caused it to be photographed.

Overt Act No. 274:  On July 11, 2020, members of the conspiracy opened a bank account at Chase Bank ending in -3899 (the "Marital Chase Bank Account") in defendant GAMAZYAN's name and using a residence owned by defendant ARTUNI's father as the associated address.

Overt Act No. 275:  On September 24, 2020, members of the conspiracy added defendant GHAZARYAN to the Marital Chase Bank Account as a joint account holder.

Overt Act No. 276:  On February 10, 2021, defendant GHAZARYAN gave birth to a daughter and falsely listed defendant GAMAZYAN on the birth certificate as the father even though the child was defendant ARTUNI's.

Overt Act No. 277:  On February 18, 2021, defendant GHAZARYAN sent ten photographs to defendant GAMAZYAN depicting possible USCIS interview questions and answers.

Overt Act No. 278:  On March 25, 2021, defendant GHAZARYAN texted CC-8 a birth celebration flyer for her and defendant ARTUNI's daughter.

Overt Act No. 279:  On March 2, 2021, defendant ARTUNI sent defendant GHAZARYAN a photograph of defendant GAMAZYAN's California driver's license.

47

Overt Act No. 280:  On August 25, 2021, defendant GHAZARYAN saved a cropped version of the photograph depicting defendant GAMAZYAN's California driver's license on her iPhone 15 Pro Max.

Overt Act No. 281:  On September 16, 2021, defendant GHAZARYAN asked CC-8 to provide her and defendant AGOPIAN's date of birth and first and last name for a "test."

Overt Act No. 282:  On June 23, 2023, defendant GHAZARYAN caused a Petition to Remove Conditions of Residence (USCIS Form I-751) to be filed with USCIS.

Overt Act No. 283:  On August 12, 2023, defendant GHAZARYAN sent defendant ARTUNI a screenshot of a check from defendant AGOPIAN for $3,500.

Overt Act No. 284:  On November 28, 2023, defendant GHAZARYAN gave birth to twin sons and falsely listed defendant GAMAZYAN on the birth certificates as the father even though the children were defendant ARTUNI's.

Overt Act No. 285:  On September 5, 2025, defendant GHAZARYAN obtained a notarized consent letter from defendant GAMAZYAN, who is listed as the father on her children's birth certificates, to travel to Armenia with her three children.

Overt Act No. 286:  On September 7, 2025, defendant GHAZARYAN attempted to flee the United States by boarding a one-way flight to Armenia with her three children and defendant ARTUNI's parents.

COUNT TWO

[18 U.S.C. § 1959(a)(1)]

[DEFENDANTS ARTUNI AND STEPANYAN]

34. Paragraphs 1 through 8 and 10 through 29 of this Second Superseding Indictment are realleged here.

35. The Artuni Enterprise, including its leaders, members, and associates, constituted an "enterprise," as defined by Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce. The Artuni Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

36. The Artuni Enterprise, through its leaders, members and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is, acts indictable under Title 18, United States Code, Sections 659 (relating to theft from interstate shipments where the act indictable under the section is felonious), 1343 (relating to wire fraud), 1344 (relating to financial institution fraud), and 1546 (relating to fraud and misuse of visas, permits, and other documents).

37. On or about July 21, 2020, in Los Angeles County, within the Central District of California, defendants ARTUNI and STEPANYAN, and others known and unknown to the Grand Jury, each aiding and abetting the others, for the purpose of maintaining and increasing position in the Artuni Enterprise, an enterprise engaged in racketeering activity, murdered Victim 1, in violation of California Penal Code Section 187(a) and 31.

49

COUNT THREE

[18 U.S.C. § 1959(a)(3)]

[DEFENDANTS ARTUNI AND STEPANYAN]

38.   Paragraphs 1 through 8, 10 through 29, 35, and 36 are re-alleged here.

39.   On or about July 21, 2020, in Los Angeles County, within the Central District of California, defendants ARTUNI and STEPANYAN, and others known and unknown to the Grand Jury, each aiding and abetting the others, for the purpose of maintaining and increasing position in the Artuni Enterprise, an enterprise engaged in racketeering activity, unlawfully and knowingly assaulted Victim 2 with a dangerous weapon, and unlawfully and knowingly assaulted Victim 2 resulting in serious bodily injury to Victim 2, in violation of California Penal Code Sections 245(a)(2), (a)(4) and 31.

COUNT FOUR

[18 U.S.C. § 1959(a)(5)]

[DEFENDANTS ARTUNI AND STEPANYAN]

40.  Paragraphs 1 through 8, 10 through 29, and 35, and 36 are re-alleged here.

41.  On or about July 21, 2020, in Los Angeles County, within the Central District of California, defendants ARTUNI and STEPANYAN, and others known and unknown to the Grand Jury, each aiding and abetting the others, for the purpose of maintaining and increasing position in the Artuni Enterprise, an enterprise engaged in racketeering activity, knowingly attempted to murder Victim 2, in violation of California Penal Code Sections 187(a), 189(a), 21a, 31, and 664.

COUNT FIVE

[18 U.S.C. § 1959(a)(3)]

[DEFENDANTS ARTUNI, HAZRYAN, STEPANYAN, SEDANO, AND GHAZARYAN]

42.   Paragraphs 1 through 8, 10 through 29, and 35 are re-alleged here.

43.   The Artuni Enterprise, through its leaders, members and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is, acts involving murder, chargeable under California Penal Code Sections 21a, 31, 182, 187, 188, 189, and 664; and acts indictable under Title 18, United States Code, Sections 659 (relating to theft from interstate shipments where the act indictable under the section is felonious), 1343 (relating to wire fraud), 1344 (relating to financial institution fraud), 1543 (relating to forgery or false use of a passport), and 1546 (relating to fraud and misuse of visas, permits, and other documents).

44.   On or about July 7, 2023, in Los Angeles County, within the Central District of California, defendants ARTUNI, HAZRYAN, STEPANYAN, SEDANO, and GHAZARYAN, and others known and unknown to the Grand Jury, each aiding and abetting the others, for the purpose of maintaining and increasing position in the Artuni Enterprise, an enterprise engaged in racketeering activity, unlawfully and knowingly assaulted Victim 4 with a dangerous weapon, and unlawfully and knowingly assaulted Victim 4 resulting in serious bodily injury to Victim 4, in violation of California Penal Code Sections 245(a)(2), (a)(4) and 31.

COUNT SIX

[18 U.S.C. § 1959(a)(5)]

[DEFENDANTS ARTUNI, HAZRYAN, STEPANYAN, SEDANO, AND GHAZARYAN]

45.  Paragraphs 1 through 8, 10 through 29, 35, and 43 are re-alleged here.

46.  On or about July 7, 2023, in Los Angeles County, within the Central District of California, defendants ARTUNI, HAZRYAN, STEPANYAN, SEDANO, and GHAZARYAN, and others known and unknown to the Grand Jury, each aiding and abetting the others, for the purpose of maintaining and increasing position in the Artuni Enterprise, an enterprise engaged in racketeering activity, knowingly attempted to murder Victim 4, in violation of California Penal Code Sections 187(a), 189(a), 21a, 31, and 664.

COUNT SEVEN

[18 U.S.C. § 1959(a)(5)]

[DEFENDANTS ARTUNI, HAZRYAN, STEPANYAN, SEDANO, AND GHAZARYAN]

47.  Paragraphs 1 through 8, 10 through 29, 35, and 43 are re-alleged here.

48.  On or about July 7, 2023, in Los Angeles County, within the Central District of California, defendants ARTUNI, HAZRYAN, STEPANYAN, SEDANO, and GHAZARYAN, and others known and unknown to the Grand Jury, each aiding and abetting the others, for the purpose of maintaining and increasing position in the Artuni Enterprise, an enterprise engaged in racketeering activity, knowingly attempted to murder Victim 5, in violation of California Penal Code Sections 187(a), 189(a), 21a, 31, and 664.

COUNT EIGHT

[18 U.S.C. § 1959(a)(3)]

[DEFENDANTS ARTUNI, AGOPIAN, HAZRYAN, STEPANYAN, DE LA CRUZ, AND GONZALEZ]

49.  Paragraphs 1 through 8, 10 through 29, 35, and 43 are re-alleged here.

50.  On or about August 25, 2023, in Los Angeles County, within the Central District of California, defendants ARTUNI, AGOPIAN, HAZRYAN, STEPANYAN, DE LA CRUZ, and GONZALEZ, and others known and unknown to the Grand Jury, each aiding and abetting the others, for the purpose of maintaining and increasing position in the Artuni Enterprise, an enterprise engaged in racketeering activity, unlawfully and knowingly assaulted Victim 6 with a dangerous weapon, and unlawfully and knowingly assaulted Victim 6 resulting in serious bodily injury to Victim 6, in violation of California Penal Code Sections 245(a)(2), (a)(4) and 31.

COUNT NINE

[18 U.S.C. § 1959(a)(5)]

[DEFENDANTS ARTUNI, AGOPIAN, HAZRYAN, STEPANYAN, DE LA CRUZ, AND GONZALEZ]

51.  Paragraphs 1 through 8, 10 through 29, 35, and 43 are re-alleged here.

52.  On or about August 25, 2023, in Los Angeles County, within the Central District of California, defendants ARTUNI, AGOPIAN, HAZRYAN, STEPANYAN, DE LA CRUZ, and GONZALEZ, and others known and unknown to the Grand Jury, each aiding and abetting the others, for the purpose of maintaining and increasing position in the Artuni Enterprise, an enterprise engaged in racketeering activity, knowingly attempted to murder Victim 4, in violation of California Penal Code Sections 187(a), 189(a), 21a, 31, and 664.

COUNT TEN

[18 U.S.C. § 1959(a)(5)]

[DEFENDANTS ARTUNI, AGOPIAN, HAZRYAN, STEPANYAN, DE LA CRUZ, AND GONZALEZ]

53.  Paragraphs 1 through 8, 10 through 29, 35, and 43 are re-alleged here.

54.  On or about August 25, 2023, in Los Angeles County, within the Central District of California, defendants ARTUNI, AGOPIAN, HAZRYAN, STEPANYAN, DE LA CRUZ, and GONZALEZ, and others known and unknown to the Grand Jury, each aiding and abetting the others, for the purpose of maintaining and increasing position in the Artuni Enterprise, an enterprise engaged in racketeering activity, knowingly attempted to murder Victim 6, in violation of California Penal Code Sections 187(a), 189(a), 21a, 31, and 664.

COUNT ELEVEN

[18 U.S.C. § 1959(a)(5)]

[DEFENDANTS ARTUNI, AGOPIAN, HAZRYAN, STEPANYAN, DE LA CRUZ, AND GONZALEZ]

55.  Paragraphs 1 through 8, 10 through 29, 35, and 43 are re-alleged here.

56.  On or about August 25, 2023, in Los Angeles County, within the Central District of California, defendants ARTUNI, AGOPIAN, HAZRYAN, STEPANYAN, DE LA CRUZ, and GONZALEZ, and others known and unknown to the Grand Jury, each aiding and abetting the others, for the purpose of maintaining and increasing position in the Artuni Enterprise, an enterprise engaged in racketeering activity, knowingly attempted to murder Victim 7, in violation of California Penal Code Sections 187(a), 189(a), 21a, 31, and 664.

COUNT TWELVE

[18 U.S.C. § 1959(a)(3)]

[DEFENDANTS ARTUNI, HAZRYAN, AND STEPANYAN]

58.  Paragraphs 1 through 8, 10 through 29, 35, and 43 are re-alleged here.

59.  On or about November 9, 2023, in Los Angeles County, within the Central District of California, defendants ARTUNI, HAZRYAN, and STEPANYAN, and others known and unknown to the Grand Jury, each aiding and abetting the others, for the purpose of maintaining and increasing position in the Artuni Enterprise, an enterprise engaged in racketeering activity, unlawfully and knowingly assaulted Victim 8 with a dangerous weapon, and unlawfully and knowingly assaulted Victim 8 resulting in serious bodily injury to Victim 8, in violation of California Penal Code Sections 245(a)(2), (a)(4) and 31.

COUNT THIRTEEN

[18 U.S.C. § 1959(a)(5)]

[DEFENDANTS ARTUNI, HAZRYAN, AND STEPANYAN]

60.  Paragraphs 1 through 8, 10 through 29, 35, and 43 are re-alleged here.

61.  On or about November 9, 2023, in Los Angeles County, within the Central District of California, defendants ARTUNI, HAZRYAN, and STEPANYAN, and others known and unknown to the Grand Jury, each aiding and abetting the others, for the purpose of maintaining and increasing position in the Artuni Enterprise, an enterprise engaged in racketeering activity, knowingly attempted to murder Victim 8, in violation of California Penal Code Sections 187(a), 189(a), 21a, 31, and 664.

COUNT FOURTEEN

[18 U.S.C. § 1959(a)(3)]

[DEFENDANTS ARTUNI, STEPANYAN, GRIMALDI, AYALA, DE LA CRUZ, AND MARES]

62.  Paragraphs 1 through 8, 10 through 29, and 35 are re-alleged here.

63.  The Artuni Enterprise, through its leaders, members and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is, acts involving murder, chargeable under California Penal Code Sections 21a, 31, 182, 187, 188, 189, and 664; and acts indictable under Title 18, United States Code, Sections 659 (relating to theft from interstate shipments where the act indictable under the section is felonious), 1343 (relating to wire fraud), 1344 (relating to financial institution fraud), 1543 (relating to forgery or false use of a passport), 1546 (relating to fraud and misuse of visas, permits, and other documents), 1958 (relating to use of interstate commerce facilities in the commission of murder-for-hire).

64.  On or about March 14, 2025, in Los Angeles County, within the Central District of California, defendants ARTUNI, STEPANYAN, GRIMALDI, AYALA, DE LA CRUZ, and MARES, and others known and unknown to the Grand Jury, each aiding and abetting the others, for the purpose of maintaining and increasing position in the Artuni Enterprise, an enterprise engaged in racketeering activity, unlawfully and knowingly assaulted Victim 5 with a dangerous weapon, and unlawfully and knowingly assaulted Victim 5 resulting in serious bodily injury to Victim 5, in violation of California Penal Code Sections 245(a)(2), (a)(4) and 31.

COUNT FIFTEEN

[18 U.S.C. § 1959(a)(5)]

[DEFENDANTS ARTUNI, STEPANYAN, GRIMALDI, AYALA, DE LA CRUZ, AND MARES]

65.  Paragraphs 1 through 8, 10 through 29, 35, and 63 are re-alleged here.

66.  On or about March 14, 2025, in Los Angeles County, within the Central District of California, defendants ARTUNI, STEPANYAN, GRIMALDI, AYALA, DE LA CRUZ, and MARES, and others known and unknown to the Grand Jury, each aiding and abetting the others, for the purpose of maintaining and increasing position in the Artuni Enterprise, an enterprise engaged in racketeering activity, knowingly attempted to murder Victim 4, in violation of California Penal Code Sections 187(a), 189(a), 21a, 31, and 664.

COUNT SIXTEEN

[18 U.S.C. § 1959(a)(5)]

[DEFENDANTS ARTUNI, STEPANYAN, GRIMALDI, AYALA, DE LA CRUZ, AND MARES]

67. Paragraphs 1 through 8, 10 through 29, 35, and 63 are re-alleged here.

68. On or about March 14, 2025, in Los Angeles County, within the Central District of California, defendants ARTUNI, STEPANYAN, GRIMALDI, AYALA, DE LA CRUZ, and MARES, and others known and unknown to the Grand Jury, each aiding and abetting the others, for the purpose of maintaining and increasing position in the Artuni Enterprise, an enterprise engaged in racketeering activity, knowingly attempted to murder Victim 5, in violation of California Penal Code Sections 187(a), 189(a), 21a, 31, and 664.

COUNT SEVENTEEN

[18 U.S.C. § 1959(a)(5)]

[DEFENDANTS ARTUNI, STEPANYAN, GRIMALDI, AYALA, DE LA CRUZ, AND MARES]

69.  Paragraphs 1 through 8, 10 through 29, 35, and 63 are re-alleged here.

70.  On or about March 14, 2025, in Los Angeles County, within the Central District of California, defendants ARTUNI, STEPANYAN, GRIMALDI, AYALA, DE LA CRUZ, and MARES, and others known and unknown to the Grand Jury, each aiding and abetting the others, for the purpose of maintaining and increasing position in the Artuni Enterprise, an enterprise engaged in racketeering activity, knowingly attempted to murder Victim 9, in violation of California Penal Code Sections 187(a), 189(a), 21a, 31, and 664.

64

COUNT EIGHTEEN

[18 U.S.C. § 1959(a)(5)]

[DEFENDANTS ARTUNI, STEPANYAN, GRIMALDI, AYALA, DE LA CRUZ, AND MARES]

71.   Paragraphs 1 through 8, 10 through 29, 35, and 63 are re-alleged here.

72.   On or about March 14, 2025, in Los Angeles County, within the Central District of California, defendants ARTUNI, STEPANYAN, GRIMALDI, AYALA, DE LA CRUZ, and MARES, and others known and unknown to the Grand Jury, each aiding and abetting the others, for the purpose of maintaining and increasing position in the Artuni Enterprise, an enterprise engaged in racketeering activity, knowingly attempted to murder Victim 10, in violation of California Penal Code Sections 187(a), 189(a), 21a, 31, and 664.

COUNT NINETEEN

[18 U.S.C. § 1958(a)]

[DEFENDANTS ARTUNI, STEPANYAN, GRIMALDI, AYALA, DE LA CRUZ, AND MARES]

73. Paragraphs 1 through 29 are re-alleged here.

A. THE OBJECTS OF THE CONSPIRACY

74. Beginning no later than on or about January 9, 2025, and continuing until on or about March 14, 2025, in Los Angeles County, within the Central District of California, and elsewhere, defendants STEPANYAN, GRIMALDI, AYALA, DE LA CRUZ, and MARES, and others known and unknown to the Grand Jury, conspired to commit use of interstate commerce facilities in the commission of murder-for-hire, in violation of Title 18, United States Code, Section 1958(a).

B. MANNER AND MEANS OF THE CONSPIRACY

75. The object of the conspiracy was to be accomplished, in substance, as follows:

a. Members of the conspiracy would identify Victim 4 as an adversary of defendant ARTUNI and the Artuni Enterprise and call for his murder.

b. Defendant STEPANYAN would hire *Sureño* gang members and associates, including defendants GRIMALDI, AYALA, DE LA CRUZ, and MARES, and others known and unknown to the Grand Jury, to partake in the plot to murder Victim 4.

c. Defendant MARES would procure a vehicle and serve as the getaway driver.

d. Defendants STEPANYAN, GRIMALDI, AYALA, and DE LA CRUZ, and others known and unknown to the Grand Jury, would track and stalk Victim 4 in preparation for the murder.

   e. Defendants STEPANYAN and GRIMALDI would serve as the triggermen and shoot at a vehicle they believed Victim 4 was in.

   f. Defendant STEPANYAN would pay defendant MARES for acting as the getaway driver.

   g. Defendant AYALA would promise that he, defendant STEPANYAN, and defendant GRIMALDI would pay defendant DE LA CRUZ for his role in the murder plot.

C. <u>OVERT ACTS</u>

  76. In furtherance of the conspiracy and to accomplish its object, defendants STEPANYAN, GRIMALDI, AYALA, DE LA CRUZ, and MARES, and others known and unknown to the Grand Jury, committed various overt acts in Los Angeles County, within the Central District of California, and elsewhere, including, but not limited to, Overt Acts 110 to 130 of Count One of this Second Superseding Indictment, which are realleged here.

COUNT TWENTY

[18 U.S.C. §§ 1958(a), 2]

[DEFENDANTS ARTUNI, STEPANYAN, GRIMALDI, AYALA, DE LA CRUZ, AND MARES]

77.  Paragraphs 1 through 29 are re-alleged here.

78.  Beginning no later than on or about January 9, 2025, and continuing until on or about March 14, 2025, in Los Angeles County, within the Central District of California, defendants ARTUNI, STEPANYAN, GRIMALDI, AYALA, DE LA CRUZ, and MARES, and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly used facilities of interstate and foreign commerce, and caused others to use facilities of interstate and foreign commerce, specifically, an automobile and cellular phones, with intent that the murder of Victim 4 be committed in violation of the laws of the State of California as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value.

68

COUNT TWENTY-ONE

[18 U.S.C. § 1349]

[DEFENDANTS AGOPIAN, HAZRYAN, STEPANYAN, BEZIK, AND SEDANO]

79.  Paragraphs 1 through 29 are re-alleged here.

A.    THE OBJECTS OF THE CONSPIRACY

80.  Beginning no later than July 8, 2015, and continuing to at least on or about December 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendants AGOPIAN, HAZRYAN, STEPANYAN, BEZIK, and SEDANO, together with others known and unknown to the Grand Jury, conspired to commit:

a.    wire fraud, in violation of Title 18, United States Code, Section 1343; and

b.    financial institution fraud, in violation of Title 18, United States Code, Section 1344(1).

B.    MANNER AND MEANS OF THE CONSPIRACY

81.  The objects of the conspiracy were to be accomplished, in substance, as follows:

a.    A co-conspirator (CC-2) would incorporate Freedom At Enterprise, Inc. in the State of Pennsylvania and then reincorporate it in the State of California.

b.    CC-2 would open a business checking account for Freedom At Enterprise, Inc. at Chase Bank, whose accounts were then insured by the Federal Deposit Insurance Corporation (the Chase Bank Business Account), designating CC-2 as the account owner.

c.    Defendant HAZRYAN and CC-2 would maintain and control the Chase Bank Business Account.

d.    Using the Chase Bank Business Account, defendant HAZRYAN and CC-2 would process credit card payments from willing

69

participants, including defendants STEPANYAN and SEDANO, and others known and unknown to the Grand Jury, to pay for purported moving services provided by Freedom At Enterprise, Inc.  In reality, as defendants HAZRYAN, STEPANYAN, and SEDANO, CC-2, and the other cardholders knew, Freedom At Enterprise, Inc. provided no moving services, and the credit cards were used to transfer funds from the credit card issuers -- which were FDIC-insured -- into the Chase Bank Business Account.

e.    Once credit card payments were made to the Chase Bank Business Account, defendants AGOPIAN, HAZRYAN, BEZIK, and SEDANO, CC-2, and others known and unknown to the Grand Jury, would drain the Chase Bank Business Account by (i) issuing checks, which were later deposited into different bank accounts or cashed; (ii) transferring the funds to a linked, external account; or (iii) wiring the money to an external account for the benefit of the co-conspirators and others.

f.    To maintain the scheme and maximize its profitability, the cardholders would dispute the transactions with Freedom At Enterprise, Inc. with the credit card issuers in order to have the charges removed from their balances.

C.    OVERT ACTS

82.  In furtherance of the conspiracy and to accomplish its object, defendants AGOPIAN, HAZRYAN, STEPANYAN, BEZIK, and SEDANO, and others known and unknown to the Grand Jury, committed various overt acts in Los Angeles County, within the Central District of California, and elsewhere, including, but not limited to, Overt Acts 137 to 199 of Count One of this Second Superseding Indictment, which are realleged here.

COUNT TWENTY-TWO

[18 U.S.C. § 371]

[DEFENDANTS ARTUNI, AGOPIAN, KAZARYAN, AND BEZIK]

83. Paragraphs 1 through 29 are re-alleged here.

A.   THE OBJECT OF THE CONSPIRACY

84. Beginning no later than on or about November 17, 2015, and continuing to at least in or around May 2023, within the Central District of California, and elsewhere, defendants ARTUNI, AGOPIAN, KAZARYAN, and BEZIK, together with others known and unknown to the Grand Jury, conspired to commit theft from interstate and foreign shipments, in violation of Title 18, United States Code, Section 659.

B.   MANNER AND MEANS OF THE CONSPIRACY

85. The object of the conspiracy was to be accomplished, in substance, as follows:

a.   Defendant BEZIK would file Articles of Organization for Sierra Transportation Services, LLC as a limited liability company with the California Secretary of State.

b.   A co-conspirator (CC-5) would file an amendment to the Articles of Organization to change Sierra Transportation Services, LLC's name to NBA Holdings, LLC.

c.   CC-5 would open two bank accounts with Bank of America for NBA Holdings, LLC, listing CC-5 as the account signer.

d.   Defendant BEZIK would register NBA Holdings, LLC with Amazon.com, Inc. as a relay carrier and act as the administrator.

e.   Using NBA Holdings, LLC, defendant BEZIK would obtain contracted freight routes from the Amazon Relay Board to transport goods purchased by Amazon from the manufacturers' designated

distribution centers to Amazon-designated fulfillment or warehouse centers.

f. Drivers, sometimes including defendant BEZIK himself, would pick the Amazon shipments up from the designated distribution centers but would not deliver them to the Amazon-designated fulfillment or warehouse centers. Instead, they would bring the goods to a "warehouse" maintained and controlled by defendant BEZIK and others known and unknown to the Grand Jury.

g. Co-conspirators would enrich themselves by stealing and taking possession of the Amazon merchandise, valued at $1,000 or more, which constituted an interstate and foreign shipment of freight and property, for both personal use and resale and profit.

h. Defendant BEZIK would use one of the NBA Holdings, LLC Bank of America accounts to pay defendants ARTUNI, AGOPIAN, and KAZARYAN, himself, and others known and unknown to the Grand Jury, with the proceeds from the stolen Amazon goods.

C. OVERT ACTS

86. In furtherance of the conspiracy and to accomplish its object, defendants ARTUNI, AGOPIAN, KAZARYAN, and BEZIK, and others known and unknown to the Grand Jury, committed various overt acts in Los Angeles County, within the Central District of California, and elsewhere, including, but not limited to, Overt Acts 200 to 239 as set forth in Count One of this Second Superseding Indictment, which are realleged and incorporated here.

COUNT TWENTY-THREE

[18 U.S.C. § 922(g)(1)]

[DEFENDANTS STEPANYAN AND SEDANO]

87.  Paragraphs 1 through 29 are re-alleged here.

88.  Beginning on a date unknown and continuing until on or about December 12, 2023, defendants STEPANYAN and SEDANO knowingly possessed firearms and ammunition, each in and affecting interstate and foreign commerce, including, but not limited to, the following:

///

**Firearms**

| Make | Model | Caliber | Type | Serial No. |
|---|---|---|---|---|
| Stag Arms | STAG-15 | 5.56mm | Rifle | 110979 |
| Century Arms | C39v2 | 7.62x39mm | Rifle | C39P2A01084 |
| Izhmash | Saiga | .223 Remington | Rifle | H04161419 |
| Ruger | American | 6.5 Creedmoor | Rifle | 690876968 |
| Glock | 23 | .40 | Pistol | LLM670 |
| Charter Arms | Bulldog | .44 SPL | Revolver | 22C03482 |
| Glock | 20 | 10mm Auto | Pistol | BNAV439 |
| Taurus | G3 | 9x19mm | Pistol | AAL034433 |
| Glock | 29 Gen4 | 10mm Auto | Pistol | BRRT964 |
| Glock | 43X | 9x19mm | Pistol | BLUA713 |
| CZ | P-10S | 9x19mm | Pistol | UC11926 |
| Taurus | 605 | .357 Magnum | Revolver | TI62464 |
| Ruger | LCP | .380 Auto | Pistol | 371851421 |
| Glock | 21 | .45 Auto | Pistol | KDK598 |
| Glock | 17L | 9x19mm | Pistol | NA436 |
| S/S Inc. | Street Sweeper | 12 gauge | Shotgun/Destructive Device | SH1292 |

**Ammunition**

| No. of Rounds | Make | Caliber |
|---|---|---|
| 10 | FN Herstal/Fiocchi | 5.7x28mm |
| 21 | FN Herstal/Fiocchi | 5.7x28mm |
| 150 | FN Herstal/Fiocchi | 5.7x28mm |
| 77 | Barnaul Cartridge Works | 9mm Luger |

74

| 59 | Sig Sauer | .380 Auto |
|---|---|---|
| 19 | Hornady | 7.62x39mm |
| 39 | Hornady | .357 Magnum |
| 11 | Hornady | 9mm Luger |
| 7 | Hornady | .45 Auto |
| 25 | Hornady | .38 Special |
| 1 | Federal Cartridge Company-CCI/Speer | .45 Auto +P |
| 50 | Fiocchi | .380 Auto |
| 6 | 205th Arsenal | .223 Remington |
| 8 | Ammo Incorporated/ Jagemann | 9mm Luger |
| 8 | Sellier & Bellot | 9x19mm |
| 26 | Remington | .22 short |

89. Defendant STEPANYAN possessed such firearms and ammunition knowing that he had previously been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

a.    identity theft, in violation of California Penal Code Section 530.5(a), in the Superior Court of the State of California, County of Los Angeles, Case Number GA063152, on or about November 15, 2005;

b.    use access account info without consent, in violation of California Penal Code Section 484E(d), in the Superior Court of the State of California, County of Los Angeles, Case Number GA063152, on or about November 15, 2005;

c.    forge official seal, in violation of California Penal Code Section 472, in the Superior Court of the State of California,

75

County of Los Angeles, Case Number GA063152, on or about November 15, 2005;

d.    possession of a controlled substance, in violation of California Health and Safety Code Section 11350(b), in the Superior Court of the State of California, County of Los Angeles, Case Number GA063152, on or about November 15, 2005;

e.    possess concentrated cannabis, in violation of California Health and Safety Code Section 11357(a), in the Superior Court of the State of California, County of Los Angeles, Case Number GA063152, on or about November 15, 2005;

f.    possession of a narcotic controlled substance, in violation of California Health and Safety Code Section 11350(a), in the Superior Court of the State of California, County of Los Angeles, Case Number GA068681, on or about February 23, 2007;

g.    possession of a narcotic controlled substance, in violation of California Health and Safety Code Section 11350(a), in the Superior Court of the State of California, County of Los Angeles, Case Number GA068258, on or about February 23, 2007;

h.    grand theft, in violation of California Penal Code Section 487(a), in the Superior Court of the State of California, County of Los Angeles, Case Number GA068855, on or about March 12, 2007;

i.    petty theft with a prior conviction, in violation of California Penal Code Section 666, in the Superior Court of the State of California, County of Los Angeles, Case Number GA068855, on or about March 12, 2007;

j.    petty theft with a prior conviction, in violation of California Penal Code Section 666, in the Superior Court of the State

of California, County of Los Angeles, Case Number GA069586, on or about July 3, 2007;

k.   possession of a narcotic controlled substance, in violation of California Health and Safety Code Section 11350(a), in the Superior Court of the State of California, County of Los Angeles, Case Number GA069586, on or about July 3, 2007;

l.   grand theft, in violation of California Penal Code Section 487(a), in the Superior Court of the State of California, County of Los Angeles, Case Number GA075549, on or about November 13, 2009;

m.   possession of a narcotic controlled substance, in violation of California Health and Safety Code Section 11350(a), in the Superior Court of the State of California, County of Los Angeles, Case Number GA075379, on or about January 13, 2009;

n.   transport/sell narcotic controlled substance, in violation of California Health and Safety Code Section 11352(a), in the Superior Court of the State of California, County of Los Angeles, Case Number GA086911, on or about October 3, 2012;

o.   possession for sale of a narcotic controlled substance, in violation of California Health and Safety Code Section 11351, in the Superior Court of the State of California, County of Los Angeles, Case Number GA086911, on or about October 3, 2012;

p.   possess controlled substance while armed, in violation of California Health and Safety Code Section 11370.1(a), in the Superior Court of the State of California, County of Los Angeles, Case Number GA086911, on or about October 3, 2012;

q.   felon in possession of a firearm, in violation of California Penal Code Section 29800(a)(1), in the Superior Court of

the State of California, County of Los Angeles, Case Number GA086911, on or about October 3, 2012;

r.    felon in possession of ammunition, in violation of California Penal Code Section 30305(a)(1), in the Superior Court of the State of California, County of Los Angeles, Case Number GA086911, on or about October 3, 2012;

s.    possess controlled substance, in violation of California Health and Safety Code Section 11377(a), in the Superior Court of the State of California, County of Los Angeles, Case Number GA086911, on or about October 3, 2012;

t.    hit and run: death or injury, in violation of California Vehicle Code Section 20001(a), in the Superior Court of the State of California, County of Los Angeles, Case Number GA087498, on or about October 3, 2012;

u.    receiving a stolen vehicle, in violation of California Penal Code Section 496D(a), in the Superior Court of the State of California, County of Los Angeles, Case Number GA087498, on or about October 3, 2012; and

v.    taking a vehicle without consent, in violation of California Vehicle Code Section 10851(a), in the Superior Court of the State of California, County of Los Angeles, Case Number GA087498, on or about October 3, 2012.

90.    Defendant SEDANO possessed such firearms and ammunition knowing that he had previously been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

a.    vandalism, in violation of California Penal Code Section 594(a), in the Superior Court of the State of California,

78

County of Los Angeles, Case Number GA069370, on or about May 17, 2007;

b.    robbery, in violation of California Penal Code Section 211, in the Superior Court of the State of California, County of Los Angeles, Case Number LA057979, on or about February 29, 2008; and

c.    vandalism, in violation of California Penal Code Section 594(a) with Gang Enhancement, in the Superior Court of the State of California, County of Los Angeles, Case Number GA081658, on or about February 23, 2011.

COUNT TWENTY-FOUR

[18 U.S.C. § 922(g)(1)]

[DEFENDANT MANUKYAN]

91. Paragraphs 1 through 29 are re-alleged here.

92. Beginning on a date unknown and continuing until on or about December 12, 2023, defendant MANUKYAN knowingly possessed firearms, namely, a Ruger, model 10/22, .22 LR caliber rifle, bearing serial number 129-54711; a United States Carbine, model M1, .30 Carbine caliber rifle, bearing serial number AA33192; and a Sears, Roebuck and Co., model 300, 20 gauge shotgun, bearing serial number Q118168, each in and affecting interstate and foreign commerce.

93. Defendant MANUKYAN possessed such firearms knowing that he had previously been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

a. identity theft, in violation of California Penal Code Section 530.5(a), in the Superior Court of the State of California, County of Los Angeles, Case Number GA089554, on or about January 9, 2014;

b. receiving stolen property, in violation of California Penal Code Section 496(a), in the Superior Court of the State of California, County of Los Angeles, Case Number GA089554, on or about January 9, 2014; and

c. prohibited person in possession of ammunition, in violation of California Penal Code Section 30305(a)(1), in the Superior Court of the State of California, County of Los Angeles, Case Number GA111641, on or about February 14, 2023.

COUNT TWENTY-FIVE

[18 U.S.C. § 922(g)(1)]

[DEFENDANT ARAKELYAN]

94. Paragraphs 1 through 29 are re-alleged here.

95. Beginning on a date unknown and continuing until on or about December 12, 2023, defendant ARAKELYAN knowingly possessed firearms, namely, a Glock, model 29 Gen4, 10mm Auto caliber pistol, bearing serial number BRRT964, and a Taurus, model G3, 9x19mm caliber pistol, bearing serial number AAL034433, each in and affecting interstate and foreign commerce.

96. Defendant ARAKLEYAN possessed such firearms knowing that he had previously been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

a. discharging a firearm into an inhabited dwelling or occupied vehicle, in violation of California Penal Code Section 246, in the Superior Court of the State of California, County of Los Angeles, Case Number GA046510, on or about February 6, 2003;

b. distribution of methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1),(b)(1)(A), in United States District Court, Eastern District of Pennsylvania, Case Number 2:06-cr-00226-AB-4, on or about October 6, 2008;

c. unlawful use of a communication facility, in violation of Title 21, United States Code Section 843(b), in United States District Court, Eastern District of Pennsylvania, Case Number 2:06-cr-00226-AB-4, on or about October 6, 2008;

d. conspiracy to distribute and possess with intent to distribute methamphetamine, in violation of Title 21, United States Code, Sections 846, 841(a)(1),(b)(1)(A), in United States District

81

Court, Eastern District of Pennsylvania, Case Number 2:06-cr-00401-AB-1, on or about October 6, 2008; and

   e. ownership or possession of firearm by prohibited person, in violation of Nevada Revised Statute 202.360.1, in the District Court of the State of Nevada, County of Clark, Case Number C-20-352231-1, on or about February 13, 2023.

COUNT TWENTY-SIX

[18 U.S.C. § 922(g)(1)]

[DEFENDANT AGOPIAN]

97. Paragraphs 1 through 29 are re-alleged here.

98. Beginning on a date unknown and continuing until on or about April 11, 2025, defendant AGOPIAN, knowingly possessed firearms and ammunition, namely, a Kel-Tec, model KSG, 12 gauge shotgun, bearing serial number XXC224; a Kimber, model Custom TLE II, .45 ACP caliber pistol, bearing serial number K707215; approximately 12 rounds of Winchester 12 gauge shotgun shells; and approximately seven rounds of Federal Cartridge Company .45 Auto caliber ammunition, each in and affecting interstate and foreign commerce.

99. Defendant AGOPIAN possessed such firearms and ammunition knowing that he had previously been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

a. grand larceny in the Third Degree, in violation of New York Penal Law Section 155.35, in the Supreme Court of the State of New York, County of New York, Case Number 04780-2014, on or about, October 30, 2014; and

b. possession of a forged instrument in the second degree, in violation of New York Penal Law Section 170.25, in the Supreme Court of the State of New York, County of New York, Case Number 04780-2014, on or about, October 30, 2014.

COUNT TWENTY-SEVEN

[18 U.S.C. § 922(g)(5)(A)]

[DEFENDANT ARAKELYAN]

100. Paragraphs 1 through 29 are re-alleged here.

101. Beginning on a date unknown, and continuing until on or about December 12, 2023, in Los Angeles County, within the Central District of California, defendant ARAKELYAN knowingly possessed firearms, namely, a Glock, model 29 Gen4, 10mm Auto caliber pistol, bearing serial number BRRT964 and a Taurus, model G3, 9x19mm caliber pistol, bearing serial number AAL034433, each in and affecting interstate and foreign commerce.

102. Defendant ARAKELYAN possessed such firearms knowing that he was then an alien illegally and unlawfully in the United States.

84

COUNT TWENTY-EIGHT

[18 U.S.C. §§ 922(o)(1), 2]

[DEFENDANTS STEPANYAN AND SEDANO]

103. Paragraphs 1 through 29 are re-alleged here.

104. Beginning on a date unknown and continuing until on or about December 12, 2023, in Los Angeles County, within the Central District of California, defendants STEPANYAN and SEDANO, and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly possessed, and caused to be possessed, machineguns, as defined in Title 18, United States Code, Section 921(a)(24) and Title 26, United States Code, Section 5845(b), namely, the following items that were designed and intended solely and exclusively for use in converting a weapon into a machinegun: a 3D-printed machinegun conversion device; an auto sear attached to a Glock, model 21, .45 Auto caliber firearm; and an auto sear attached to a Glock, model 17L, 9x19mm Luger caliber firearm, which defendants STEPANYAN and SEDANO knew to be machineguns.

COUNT TWENTY-NINE

[18 U.S.C. § 924(j)(1), 2]

[DEFENDANTS ARTUNI AND STEPANYAN]

105. Paragraphs 1 through 29 are re-alleged here.

106. On or about July 21, 2020, in Los Angeles County, within the Central District of California, defendants ARTUNI and STEPANYAN, and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly used and carried, and willfully caused to be used and carried, a firearm, namely, a privately-manufactured Polymer80, Inc. 9mm firearm bearing model number PB94DC with a sound suppressor attached, during and in relation to, and possessed the firearm, and willfully caused the firearm to be possessed, in furtherance of, a crime of violence, namely, murder in aid of racketeering, in violation of Title 18, United States Code, Section 1959(a)(1), as charged in Count Two of this Second Superseding Indictment, and, in so doing, discharged and willfully caused the discharge of the firearm.

107. In the course of discharging the firearm, and through the use of this firearm, defendants ARTUNI and STEPANYAN, and others known and unknown to the Grand Jury, each aiding and abetting the others, caused the death of Victim 1, a death that constituted murder, as defined in Title 18, United States Code, Section 1111.

COUNT THIRTY

[18 U.S.C. §§ 924(c)(1)(A)(i), (iii), 2]

[DEFENDANTS ARTUNI, HAZRYAN, STEPANYAN, AND SEDANO]

108. Paragraphs 1 through 29 are re-alleged here.

109. On or about July 7, 2023, in Los Angeles County, within the Central District of California, defendants ARTUNI, HAZRYAN, STEPANYAN, and SEDANO, and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly used and carried, and willfully caused to be used and carried, a firearm, namely, a Glock, model 21, .45 Auto caliber pistol bearing serial number KDK598 with an attached auto sear, during and in relation to, and possessed the firearm, and willfully caused the firearm to be possessed, in furtherance of, a crime of violence, namely, assault with a dangerous weapon in aid of racketeering, in violation of Title 18, United States Code, Section 1959(a)(3), as charged in Count Five of this Second Superseding Indictment.

COUNT THIRTY-ONE

[18 U.S.C. §§ 924(c)(1)(A)(i), (iii), 2]

[DEFENDANTS ARTUNI, HAZRYAN, STEPANYAN, AND SEDANO]

110. Paragraphs 1 through 29 are re-alleged here.

111. On or about July 7, 2023, in Los Angeles County, within the Central District of California, defendants ARTUNI, HAZRYAN, STEPANYAN, and SEDANO, and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly used and carried, and willfully caused to be used and carried, a firearm, namely, a Glock, model 21, .45 Auto caliber pistol bearing serial number KDK598 with an attached auto sear, during and in relation to, and possessed the firearm, and willfully caused the firearm to be possessed, in furtherance of, a crime of violence, namely, attempted murder in aid of racketeering, in violation of Title 18, United States Code, Section 1959(a)(5), as charged in Count Six of this Second Superseding Indictment, and, in so doing, discharged and willfully caused the discharge of the firearm.

88

COUNT THIRTY-TWO

[18 U.S.C. §§ 924(c)(1)(A)(i), (iii), 2]

[DEFENDANTS ARTUNI, HAZRYAN, STEPANYAN, AND SEDANO]

112. Paragraphs 1 through 29 are re-alleged here.

113. On or about July 7, 2023, in Los Angeles County, within the Central District of California, defendants ARTUNI, HAZRYAN, STEPANYAN, and SEDANO, and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly used and carried, and willfully caused to be used and carried, a firearm, namely, a Glock, model 21, .45 Auto caliber pistol bearing serial number KDK598 with an attached auto sear, during and in relation to, and possessed the firearm, and willfully caused the firearm to be possessed, in furtherance of, a crime of violence, namely, attempted murder in aid of racketeering, in violation of Title 18, United States Code, Section 1959(a)(5), as charged in Count Seven of this Second Superseding Indictment, and, in so doing, discharged and willfully caused the discharge of the firearm.

COUNT THIRTY-THREE

[18 U.S.C. §§ 924(c)(1)(A)(i), (iii), 2]

[DEFENDANTS ARTUNI, HAZRYAN, STEPANYAN, AND SEDANO]

114. Paragraphs 1 through 29 are re-alleged here.

115. On or about July 7, 2023, in Los Angeles County, within the Central District of California, defendants ARTUNI, HAZRYAN, STEPANYAN, and SEDANO, and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly used and carried, and willfully caused to be used and carried, a firearm, during and in relation to, and possessed the firearm, and willfully caused the firearm to be possessed, in furtherance of, a crime of violence, namely, assault with a dangerous weapon in aid of racketeering, in violation of Title 18, United States Code, Section 1959(a)(3), as charged in Count Five of this Second Superseding Indictment.

90

COUNT THIRTY-FOUR

[18 U.S.C. §§ 924(c)(1)(A)(i), (iii), 2]

[DEFENDANTS ARTUNI, HAZRYAN, STEPANYAN, AND SEDANO]

116. Paragraphs 1 through 29 are re-alleged here.

117. On or about July 7, 2023, in Los Angeles County, within the Central District of California, defendants ARTUNI, HAZRYAN, STEPANYAN, and SEDANO, and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly used and carried, and willfully caused to be used and carried, a firearm, during and in relation to, and possessed the firearm, and willfully caused the firearm to be possessed, in furtherance of, a crime of violence, namely, attempted murder in aid of racketeering, in violation of Title 18, United States Code, Section 1959(a)(5), as charged in Count Six of this Second Superseding Indictment, and, in so doing, discharged and willfully caused the discharge of the firearm.

COUNT THIRTY-FIVE

[18 U.S.C. §§ 924(c)(1)(A)(i), (iii), 2]

[DEFENDANTS ARTUNI, HAZRYAN, STEPANYAN, AND SEDANO]

118. Paragraphs 1 through 29 are re-alleged here.

119. On or about July 7, 2023, in Los Angeles County, within the Central District of California, defendants ARTUNI, HAZRYAN, STEPANYAN, and SEDANO, and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly used and carried, and willfully caused to be used and carried, a firearm, during and in relation to, and possessed the firearm, and willfully caused the firearm to be possessed, in furtherance of, a crime of violence, namely, attempted murder in aid of racketeering, in violation of Title 18, United States Code, Section 1959(a)(5), as charged in Count Seven of this Second Superseding Indictment, and, in so doing, discharged and willfully caused the discharge of the firearm.

COUNT THIRTY-SIX

[18 U.S.C. §§ 924(c)(1)(A)(i), (iii), 2]

[DEFENDANTS ARTUNI, AGOPIAN, HAZRYAN, STEPANYAN, SEDANO, DE LA CRUZ, AND GONZALEZ]

120. Paragraphs 1 through 29 are re-alleged here.

121. On or about August 25, 2023, in Los Angeles County, within the Central District of California, defendants ARTUNI, AGOPIAN, HAZRYAN, STEPANYAN, SEDANO, DE LA CRUZ, and GONZALEZ, and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly used and carried, and caused to be used and carried, a firearm during and in relation to, and possessed the firearm, and caused the firearm to be possessed, in furtherance of, a crime of violence, namely, assault with a dangerous weapon in aid of racketeering, in violation of Title 18, United States Code, Section 1959(a)(3), as charged in Count Eight of this Second Superseding Indictment.

COUNT THIRTY-SEVEN

[18 U.S.C. §§ 924(c)(1)(A)(i), (iii), 2]

[DEFENDANTS ARTUNI, AGOPIAN, HAZRYAN, STEPANYAN, SEDANO, DE LA CRUZ, AND GONZALEZ]

122. Paragraphs 1 through 29 are re-alleged here.

123. On or about August 25, 2023, in Los Angeles County, within the Central District of California, defendants ARTUNI, AGOPIAN, HAZRYAN, STEPANYAN, SEDANO, DE LA CRUZ, and GONZALEZ, and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly used and carried, and caused to be used and carried, a firearm during and in relation to, and possessed the firearm, and caused the firearm to be possessed, in furtherance of, a crime of violence, namely, attempted murder in aid of racketeering, in violation of Title 18, United States Code, Section 1959(a)(5), as charged in Count Nine of this Second Superseding Indictment, and, in so doing, discharged the firearm.

94

COUNT THIRTY-EIGHT

[18 U.S.C. §§ 924(c)(1)(A)(i), (iii), 2]

[DEFENDANTS ARTUNI, AGOPIAN, HAZRYAN, STEPANYAN, SEDANO, DE LA CRUZ, AND GONZALEZ]

124. Paragraphs 1 through 29 are re-alleged here.

125. On or about August 25, 2023, in Los Angeles County, within the Central District of California, defendants ARTUNI, AGOPIAN, HAZRYAN, STEPANYAN, SEDANO, DE LA CRUZ, and GONZALEZ, and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly used and carried, and caused to be used and carried, a firearm during and in relation to, and possessed the firearm, and caused the firearm to be possessed, in furtherance of, a crime of violence, namely, attempted murder in aid of racketeering, in violation of Title 18, United States Code, Section 1959(a)(5), as charged in Count Ten of this Second Superseding Indictment, and, in so doing, discharged the firearm.

COUNT THIRTY-SIX

[18 U.S.C. §§ 924(c)(1)(A)(i), (iii), 2]

[DEFENDANTS ARTUNI, AGOPIAN, HAZRYAN, STEPANYAN, SEDANO, DE LA CRUZ, AND GONZALEZ]

126. Paragraphs 1 through 29 are re-alleged here.

127. On or about August 25, 2023, in Los Angeles County, within the Central District of California, defendants ARTUNI, AGOPIAN, HAZRYAN, STEPANYAN, SEDANO, DE LA CRUZ, and GONZALEZ, and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly used and carried, and caused to be used and carried, a firearm during and in relation to, and possessed the firearm, and caused the firearm to be possessed, in furtherance of, a crime of violence, namely, attempted murder in aid of racketeering, in violation of Title 18, United States Code, Section 1959(a)(5), as charged in Count Eleven of this Second Superseding Indictment, and, in so doing, discharged the firearm.

96

COUNT THIRTY-SEVEN

[18 U.S.C. §§ 924(c)(1)(A)(i), 2]

[DEFENDANTS ARTUNI, AGOPIAN, HAZRYAN, STEPANYAN, SEDANO, DE LA CRUZ, AND GONZALEZ]

128. Paragraphs 1 through 29 are re-alleged here.

129. On or about August 25, 2023, in Los Angeles County, within the Central District of California, defendants ARTUNI, AGOPIAN, HAZRYAN, STEPANYAN, SEDANO, DE LA CRUZ, and GONZALEZ, and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly used and carried, and caused to be used and carried, a firearm during and in relation to, and possessed the firearm, and caused the firearm to be possessed, in furtherance of, a crime of violence, namely, assault with a dangerous weapon in aid of racketeering, in violation of Title 18, United States Code, Section 1959(a)(3), as charged in Count Eight of this Second Superseding Indictment.

97

COUNT THIRTY-EIGHT

[18 U.S.C. §§ 924(c)(1)(A)(i), 2]

[DEFENDANTS ARTUNI, AGOPIAN, HAZRYAN, STEPANYAN, SEDANO, DE LA CRUZ, AND GONZALEZ]

130. Paragraphs 1 through 29 are re-alleged here.

131. On or about August 25, 2023, in Los Angeles County, within the Central District of California, defendants ARTUNI, AGOPIAN, HAZRYAN, STEPANYAN, SEDANO, DE LA CRUZ, and GONZALEZ, and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly used and carried, and caused to be used and carried, a firearm during and in relation to, and possessed the firearm, and caused the firearm to be possessed, in furtherance of, a crime of violence, namely, attempted murder in aid of racketeering, in violation of Title 18, United States Code, Section 1959(a)(5), as charged in Count Nine of this Second Superseding Indictment.

COUNT THIRTY-NINE

[18 U.S.C. §§ 924(c)(1)(A)(i), 2]

[DEFENDANTS ARTUNI, AGOPIAN, HAZRYAN, STEPANYAN, SEDANO, DE LA CRUZ,

AND GONZALEZ]

132. Paragraphs 1 through 29 are re-alleged here.

133. On or about August 25, 2023, in Los Angeles County, within the Central District of California, defendants ARTUNI, AGOPIAN, HAZRYAN, STEPANYAN, SEDANO, DE LA CRUZ, and GONZALEZ, and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly used and carried, and caused to be used and carried, a firearm during and in relation to, and possessed the firearm, and caused the firearm to be possessed, in furtherance of, a crime of violence, namely, attempted murder in aid of racketeering, in violation of Title 18, United States Code, Section 1959(a)(5), as charged in Count Ten of this Second Superseding Indictment.

COUNT FORTY

[18 U.S.C. §§ 924(c)(1)(A)(i), 2]

[DEFENDANTS ARTUNI, AGOPIAN, HAZRYAN, STEPANYAN, SEDANO, DE LA CRUZ,

AND GONZALEZ]

134. Paragraphs 1 through 29 are re-alleged here.

135. On or about August 25, 2023, in Los Angeles County, within the Central District of California, defendants ARTUNI, AGOPIAN, HAZRYAN, STEPANYAN, SEDANO, DE LA CRUZ, and GONZALEZ, and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly used and carried, and caused to be used and carried, a firearm during and in relation to, and possessed the firearm, and caused the firearm to be possessed, in furtherance of, a crime of violence, namely, attempted murder in aid of racketeering, in violation of Title 18, United States Code, Section 1959(a)(5), as charged in Count Eleven of this Second Superseding Indictment.

COUNT FORTY-ONE

[18 U.S.C. §§ 924(c)(1)(A)(i), (iii), 2]

[DEFENDANTS ARTUNI, HAZRYAN, AND STEPANYAN]

136. Paragraphs 1 through 29 are re-alleged here.

137. On or about November 9, 2023, in Los Angeles County, within the Central District of California, defendants ARTUNI, HAZRYAN, AND, STEPANYAN, and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly used and carried, and caused to be used and carried, a firearm during and in relation to, and possessed the firearm, and caused the firearm to be possessed, in furtherance of, a crime of violence, namely, assault with a dangerous weapon in aid of racketeering, in violation of Title 18, United States Code, Section 1959(a)(3), as charged in Count Twelve of this Second Superseding Indictment, and, in so doing, discharged the firearm.

COUNT FORTY-TWO

[18 U.S.C. §§ 924(c)(1)(A)(i), (iii), 2]

[DEFENDANTS ARTUNI, HAZRYAN, AND STEPANYAN]

138. Paragraphs 1 through 29 are re-alleged here.

139. On or about November 9, 2023, in Los Angeles County, within the Central District of California, defendants ARTUNI, HAZRYAN, AND, STEPANYAN, and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly used and carried, and caused to be used and carried, a firearm during and in relation to, and possessed the firearm, and caused the firearm to be possessed, in furtherance of, a crime of violence, namely, attempted murder in aid of racketeering, in violation of Title 18, United States Code, Section 1959(a)(5), as charged in Count Thirteen of this Second Superseding Indictment, and, in so doing, discharged the firearm.

102

COUNT FORTY-THREE

[18 U.S.C. §§ 924(c)(1)(A)(i), (iii), 2]

[DEFENDANTS ARTUNI, STEPANYAN, GRIMALDI, AYALA, DE LA CRUZ, AND MARES]

140. Paragraphs 1 through 29 are re-alleged here.

141. On or about March 14, 2025, in Los Angeles County, within the Central District of California, defendants ARTUNI, STEPANYAN, GRIMALDI, DE LA CRUZ, and MARES, and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly used and carried, and caused to be used and carried, a firearm, during and in relation to, and possessed the firearm, and caused the firearm to be possessed, in furtherance of, a crime of violence, namely, assault with a dangerous weapon in aid of racketeering, in violation of Title 18, United States Code, Section 1959(a)(3), as charged in Count Fourteen of this Second Superseding Indictment, and, in so doing, discharged the firearm.

COUNT FORTY-FOUR

[18 U.S.C. §§ 924(c)(1)(A)(i), (iii), 2]

[DEFENDANTS ARTUNI, STEPANYAN, GRIMALDI, AYALA, DE LA CRUZ, AND MARES]

142. Paragraphs 1 through 29 are re-alleged here.

143. On or about March 14, 2025, in Los Angeles County, within the Central District of California, defendants ARTUNI, STEPANYAN, GRIMALDI, DE LA CRUZ, and MARES, and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly used and carried, and caused to be used and carried, a firearm, during and in relation to, and possessed the firearm, and caused the firearm to be possessed, in furtherance of, a crime of violence, namely, attempted murder in aid of racketeering, in violation of Title 18, United States Code, Section 1959(a)(5), as charged in Count Fifteen of this Second Superseding Indictment, and, in so doing, discharged the firearm.

COUNT FORTY-FIVE

[18 U.S.C. §§ 924(c)(1)(A)(i), (iii), 2]

[DEFENDANTS ARTUNI, STEPANYAN, GRIMALDI, AYALA, DE LA CRUZ, AND MARES]

144. Paragraphs 1 through 29 are re-alleged here.

145. On or about March 14, 2025, in Los Angeles County, within the Central District of California, defendants ARTUNI, STEPANYAN, GRIMALDI, DE LA CRUZ, and MARES, and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly used and carried, and caused to be used and carried, a firearm, during and in relation to, and possessed the firearm, and caused the firearm to be possessed, in furtherance of, a crime of violence, namely, attempted murder in aid of racketeering, in violation of Title 18, United States Code, Section 1959(a)(5), as charged in Count Sixteen of this Second Superseding Indictment, and, in so doing, discharged the firearm.

COUNT FORTY-SIX

[18 U.S.C. §§ 924(c)(1)(A)(i), (iii), 2]

[DEFENDANTS ARTUNI, STEPANYAN, GRIMALDI, AYALA, DE LA CRUZ, AND MARES]

146. Paragraphs 1 through 29 are re-alleged here.

147. On or about March 14, 2025, in Los Angeles County, within the Central District of California, defendants ARTUNI, STEPANYAN, GRIMALDI, DE LA CRUZ, and MARES, and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly used and carried, and caused to be used and carried, a firearm, during and in relation to, and possessed the firearm, and caused the firearm to be possessed, in furtherance of, a crime of violence, namely, attempted murder in aid of racketeering, in violation of Title 18, United States Code, Section 1959(a)(5), as charged in Count Seventeen of this Second Superseding Indictment, and, in so doing, discharged the firearm.

COUNT FORTY-SEVEN

[18 U.S.C. §§ 924(c)(1)(A)(i), (iii), 2]

[DEFENDANTS ARTUNI, STEPANYAN, GRIMALDI, AYALA, DE LA CRUZ, AND

MARES]

148. Paragraphs 1 through 29 are re-alleged here.

149. On or about March 14, 2025, in Los Angeles County, within the Central District of California, defendants ARTUNI, STEPANYAN, GRIMALDI, DE LA CRUZ, and MARES, and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly used and carried, and caused to be used and carried, a firearm, during and in relation to, and possessed the firearms and caused the firearms to be possessed in furtherance of, a crime of violence, namely, attempted murder in aid of racketeering, in violation of Title 18, United States Code, Section 1959(a)(5), as charged in Count Eighteen of this Second Superseding Indictment, and, in so doing, discharged the firearm.

COUNTS FORTY-EIGHT THROUGH FIFTY-THREE

[26 U.S.C. § 5861(d)]

[DEFENDANTS STEPANYAN AND SEDANO]

150. Paragraphs 1 through 29 are re-alleged here.

151. Beginning on a date unknown and continuing until on or about December 12, 2023, in Los Angeles County, within the Central District of California, defendants STEPANYAN and SEDANO knowingly possessed the following firearms, each of which defendants STEPANYAN and SEDANO knew to be a firearm, a short-barreled rifle, and a firearm silencer, as defined in Title 26, United States Code, Section 5845(a)(3), (a)(7), and (c), and Title 18, United States Code, Section 921(a)(25), and which had not been registered to defendants STEPANYAN or SEDANO in the National Firearms Registration and Transfer Record, as required by Chapter 53, Title 26, United States Code:

| COUNT | DESCRIPTION |
| --- | --- |
| FORTY-EIGHT | A firearm silencer bearing no legitimate manufacturer's mark or serial number |
| FORTY-NINE | A firearm silencer bearing no legitimate manufacturer's mark or serial number |
| FIFTY | A firearm silencer bearing no legitimate manufacturer's mark or serial number |
| FIFTY-ONE | A firearm silencer bearing no legitimate manufacturer's mark or serial number |
| FIFTY-TWO | A S/S Inc., Street Sweeper, 12 gauge shotgun/destructive device, bearing serial number SH1292 |
| FIFTY-THREE | An AR-Style short-barreled rifle bearing no legitimate manufacturer's mark or serial number (commonly referred to as a "ghost gun") |

108

COUNTS FIFTY-FOUR THROUGH FIFTY-EIGHT

[26 U.S.C. § 5861(i)]

[DEFENDANTS STEPANYAN AND SEDANO]

152. Paragraphs 1 through 29 are re-alleged here.

153. Beginning on a date unknown and continuing until on or about December 12, 2023, in Los Angeles County, within the Central District of California, defendants STEPANYAN and SEDANO knowingly possessed the following firearms, each of which defendants STEPANYAN and SEDANO knew to be a firearm, a short-barreled rifle, and a firearm silencer, as defined in Title 26, United States Code, Section 5845(a)(3), (a)(7), and (c), and Title 18, United States Code, Section 921(a)(25), and which did not bear a serial number, as required by Chapter 53, Title 26, United States Code.

| COUNT | DESCRIPTION |
|---|---|
| FIFTY-FOUR | A firearm silencer bearing no legitimate manufacturer's mark or serial number |
| FIFTY-FIVE | A firearm silencer bearing no legitimate manufacturer's mark or serial number |
| FIFTY-SIX | A firearm silencer bearing no legitimate manufacturer's mark or serial number |
| FIFTY-SEVEN | A firearm silencer bearing no legitimate manufacturer's mark or serial number |
| FIFTY-EIGHT | An AR-Style short-barreled rifle bearing no legitimate manufacturer's mark or serial number (commonly referred to as a "ghost gun") |

COUNT FIFTY-NINE

[18 U.S.C. § 371]

[DEFENDANTS ARTUNI, AGOPIAN, GHAZARYAN, AND GAMAZYAN]

A.   INTRODUCTORY ALLEGATIONS

154. On or about March 8, 2005, defendant ARTUNI arrived in the United States, represented that he was an Iranian citizen, and made an asylum claim.

155. On or about March 8, 2006, defendant ARTUNI obtained a Permanent Resident Card.

156. Starting no later than in or around May 2018, defendant ARTUNI began a romantic relationship with defendant GHAZARYAN, a citizen of Armenia.

157. On or about June 12, 2020, defendants ARTUNI and GHAZARYAN held a wedding ceremony, which defendant AGOPIAN and his significant other (CC-8) participated in, and they videotaped it.

B.   OBJECTS OF THE CONSPIRACY

158. Beginning no later than in or around May 2018, and continuing through the present, in Los Angeles County, within the Central District of California, and elsewhere, defendants ARTUNI, AGOPIAN, GHAZARYAN, and GAMAZYAN, together with others known and unknown to the Grand Jury, conspired to commit:

a.   Marriage Fraud, in violation of Title 8, United States Code, Section 1325(c); and

b.   Fraud and Misuse of Visas, Permits, and Other Documents, in violation of Title 18, United States Code, Section 1546(a).

110

C.    MANNER AND MEANS OF THE CONSPIRACY

159. The objects of the conspiracy were to be accomplished, in substance, as follows:

a.    To procure a favorable adjustment of the immigration status of his girlfriend, defendant GHAZARYAN, defendant ARTUNI would recruit defendant GAMAZYAN, a naturalized United States citizen, to marry defendant GHAZARYAN.

b.    Defendant GHAZARYAN would travel to the United States for the purpose of having a true romantic relationship with defendant ARTUNI.

c.    After her arrival in the United States, defendant GHAZARYAN, a citizen of Armenia and, therefore, an alien in the United States, would enter a sham marriage with defendant GAMAZYAN to procure an adjustment of her immigration status.

d.    Defendant AGOPIAN would provide defendant ARTUNI with CC-8's personal identifying documents for submission to USCIS in support of CC-8's sponsorship of defendant GHAZARYAN.

e.    Defendant ARTUNI would communicate with defendant GHAZARYAN using an iPhone X and pose as defendant GAMAZYAN for the purpose of later submitting these conversations to USCIS.

f.    An individual who extended himself as a legal consultant (CC-9) would advise defendants ARTUNI and GHAZARYAN concerning the immigration process and facilitate the submission of documents to USCIS.

g.    Defendants GHAZARYAN and GAMAMZYAN, and others known and unknown to the Grand Jury, would submit sworn immigration forms containing false statements to USCIS in support of defendant GHAZARYAN's adjustment of immigration status.

111

h.    To ensure the sham marriage was not exposed, which would risk defendant GHAZARYAN's immigration status and ability to remain in the United States with defendant ARTUNI:

i.    Defendants GHAZARYAN and GAMAZYAN would maintain the appearance of a genuine marital relationship;

ii.    Defendants GHAZARYAN and GAMAZYAN, and others known and unknown to the Grand Jury, would file documentation with USCIS to demonstrate the validity of their sham marriage;

iii. Defendants ARTUNI, GHAZARYAN, and GAMAZYAN, and others known and unknown to the Grand Jury, would videotape and photograph defendants GHAZARYAN and GAMAZYAN's staged proposal and staged wedding ceremony; and

iv.    Defendant AGOPIAN and CC-8 would participate in defendant GHAZARYAN's staged wedding ceremony with defendant GAMAZYAN;

v.    When defendant GHAZARYAN gave birth to children in the United States, she would falsely list defendant GAMAZYAN as the father on the birth certificate even though she knew them to be defendant ARTUNI's offspring; and

vi.    To evade detection by law enforcement, defendant GHAZARYAN would attempt to board a one-way flight to Armenia with her three children and defendant ARTUNI's parents.

D.    OVERT ACTS

160. In furtherance of the conspiracy and to accomplish its object, defendants ARTUNI, AGOPIAN, GHAZARYAN, and GAMAZYAN, and others known and unknown to the Grand Jury, committed various overt acts in Los Angeles County, within the Central District of California, and elsewhere, including, but not limited to, Overt Acts

240 to 286 of Count One of this Second Superseding Indictment, which are realleged here.

COUNT SIXTY

[18 U.S.C. §§ 1546(a), 2]

[DEFENDANTS ARTUNI, AGOPIAN, GHAZARYAN, AND GAMAZYAN]

161. The Grand Jury realleges paragraphs 153 through 157 here.

162. Starting in or around May 2018, and continuing through the present, in Los Angeles County, within the Central District of California, and elsewhere, defendants ARTUNI, AGOPIAN, GHAZARYAN, and GAMAZYAN, each aiding and abetting the others, knowingly uttered, used, possessed, obtained, accepted, and received, and willfully caused to be uttered, used, possessed, obtained, accepted, and received, a document prescribed by statute and regulation for entry into and as evidence of authorized stay and employment in the United States, that is, a Conditional Permanent Resident Card in the name of "Anna Ghazaryan," for a foreign national, namely, defendant GHAZARYAN, to obtain lawful status in the United States knowing the document to be falsely made, to have been procured by means of a false claim and statement, and to have been otherwise procured by fraud and unlawfully obtained.

114

COUNT SIXTY-ONE

[8 U.S.C. § 1325(c); 18 U.S.C. § 2]

[DEFENDANTS ARTUNI, AGOPIAN, GHAZARYAN, and GAMAZYAN]

163. The Grand Jury realleges paragraphs 153 through 157 here.

164. On or about August 26, 2019, and continuing through the present, in Los Angeles County, within the Central District of California, and elsewhere, defendant GHAZARYAN, an alien and a citizen of Armenia, and defendant GAMAZYAN, a naturalized citizen of the United States, knowingly and unlawfully entered into marriage, not intending to establish a life together, and for the purpose of evading a provision of the immigration laws of the United States, and defendants ARTUNI and AGOPIAN aided and abetted and willfully caused defendant GHAZARYAN, an alien and a citizen of Armenia, and defendant GAMAZYAN, a naturalized citizen of the United States, to knowingly and unlawfully enter into marriage, not intending to establish a life together, and for the purpose of evading a provision of the immigration laws of the United States.

115

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 1963]

165. Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 1963, in the event of any defendant's conviction of the offense set forth in Count One of this Second Superseding Indictment.

166. Any defendant so convicted shall forfeit to the United States of America the following:

(a)  Any interest the convicted defendant has acquired or maintained as a result of the offense;

(b)  Any interest in, security of, claim against, or property or contractual right of any kind affording a source or influence over, any enterprise which the convicted defendant has established, operated, controlled, conducted, or participated in the conduct of, as a result of the offense;

(c)  Any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection as a result of the offense; and

(d)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a), (b), and (c).

167. Pursuant to Title 18, United States Code, Section 1963(m), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the

116

property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

18 U.S.C. §§ 981(a)(1)(C), 924(d) and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 924(d), and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in Counts Two through Eighteen of this Second Superseding Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)  All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses;

(b)  All right, title, and interest in any firearm or ammunition involved in or used in any such offense; and

(c)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been

placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION THREE

[18 U.S.C. § 982]

1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(2), in the event of any defendant's conviction of the offense set forth in Count Twenty-One of this Second Superseding Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a) All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION FOUR

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offense set forth in Count Nineteen, Twenty, or Twenty-Two of this Second Superseding Indictment.

2.    Any defendant so convicted, shall forfeit to the United States of America the following:

(a)  All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offense; and

(b)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.  Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

121

FORFEITURE ALLEGATION FIVE

[18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 924(d)(1), and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts Twenty-Three through Forty-Seven of this Second Superseding Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)  All right, title, and interest in any firearm or ammunition involved in or used in any such offense; and

(b)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

122

FORFEITURE ALLEGATION SIX

[26 U.S.C. § 5872, and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 26, United States Code, Section 5872 and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offense set forth in any of Counts Forty-Eight through Fifty-Eight of this Second Superseding Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)  All right, title, and interest in any firearm involved in any such offense; and

(b)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

that cannot be divided without difficulty.

124

FORFEITURE ALLEGATION SEVEN

[18 U.S.C. §§ 982(a)(6)(A)(i) and (ii)(I) and (II)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(6)(A)(i) and (ii)(I) and (II), in the event of any defendant's conviction of any of the offense set forth in Sixty of this Second Superseding Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)  Any conveyance, including any vessel, vehicle, or aircraft used in the commission of the offense;

(b)  Any property, real or personal, that is used to facilitate, or is intended to be used to facilitate, the commission of the offense;

(c)  Any property, real or personal, that constitutes or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of the offense; and

(d)  In the event such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a), (b), and (c).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been

125

transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/S/
Foreperson

BILAL A. ESSAYLI
Acting United States Attorney

JOSEPH T. MCNALLY
Assistant United States Attorney
Acting Chief, Criminal Division

KEVIN J. BUTLER
Assistant United States Attorney
Acting Chief, Major Crimes Section

LYNDSI ALLSOP
Assistant United States Attorney
Deputy Chief, Major Crimes Section

KENNETH R. CARBAJAL
Assistant United States Attorney
Major Crimes Section

126